459 So.2d 719 (1984)
Albert V. COLLIER
v.
WILLIAMS-McWILLIAMS COMPANY, INC., et al.
No. CA-1855.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1984.
Writ Denied January 25, 1985.
*721 Joseph M. Bruno, Bruno & Bruno, New Orleans, for plaintiff/appellant.
Bertrand M. Cass, Jr. and A. Wendel Stout, III., Deutsch, Kerrigan & Stiles, New Orleans, for defendants (Williams-McWilliams).
Lawrence J. Ernst, Christovich & Kearney, New Orleans, for defendants (Commercial Insurance Co. of Newark, New Jersey Fidelity & Casualty Co. of New York).
Thomas E. Loehn, Boggs, Loehn & Rodrigue, New Orleans, for defendants (Employers Liability Assurance Corp., Ltd.).
Before CIACCIO, LOBRANO and ARMSTRONG, JJ.
LOBRANO, Judge.
The two issues presented in this appeal are first, did the lower court err in failing to grant appellant Collier a continuance of his September 16th trial date, and second, does appellant Employers Liability Assurance Corporation, LTD. (Employers) owe a duty to defend its assured?
On December 23, 1976 Albert Collier (Collier) filed suit against William McWilliams, Inc. (McWilliams), its executive officers, and numerous other parties seeking relief in the form of damages allegedly sustained as a result of the occupational lung disease, silicosis. On June 3, 1977 Collier amended his petition to include a claim for workman's compensation against the various defendants, and specifically alleged that he worked for McWilliams from 1962 thru 1967. On December 27, 1978, the McWilliams' executive officers third partied Employers, as well as other insurers, alleging that they were insured under policies of insurance issued during the material times alleged in the petition, and consequently were obligated to defend, and indemnify against any losses sustained. Employers denied coverage and refused to provide a defense.
A trial was originally scheduled for May 6, 1982 on motion of one of the defendants, however it was presumably continued as the record is void of any reason why the trial was not had that date. On May 4, 1982, the trial court issued an order which transferred this matter to a commissioner for the purpose of intensifying discovery efforts, narrowing the issues and possibly reducing the length of trial. In addition, the order also provided in pertinent part:
"IT IS FURTHER ORDERED that all pleadings, motions and orders must be presented to the Commissioner to which this case is assigned; Upon appropriate Motion and/or Request by the Commissioner to whom this case is assigned, the case may be re-assigned for trial proceedings."
On May 12th the Commissioner issued an order for a pre-trial on May 21st. Collier's counsel at that time moved for a continuance for the reason that he had a conflict with another matter previously scheduled. For unknown reasons that motion was denied. There is no record of what took place at the May 21st pre-trial, however, another order was issued by the Commissioner on June 17th calling for another pre-trial on June 29th, with discovery to be completed by August 16, 1982. On the same date, June 17th, the Commissioner also set the trial for September 16, 1982. On September 10th, Collier's new attorney (who is also his present attorney) requested a continuance of the September 16th trial date setting forth two reasons. First he alleges that during the previous month (presumably August, 1982) Collier's condition had worsened rendering him permanently disabled, and therefore additional time would be required to amend the pleadings to seek additional sums and to obtain medical reports to substantiate the claim. Second, he alleges that a trial by the Commissioner would be contrary to the orders of the trial judge who had reserved the right to try the matter himself. That motion was denied by the Commissioner on September 14th, and Collier took writs to this Court on September 16th. This Court denied the *722 writs, and the Commissioner called the matter for trial on September 16th. At that time Collier's attorney offered no evidence, and chose to stand on his motion for continuance. The Commissioner then proceeded to hear evidence on the third party demands.
On March 9, 1983 the Commissioner filed his report with the trial court, and on March 22, 1983 judgment was rendered dismissing Collier's claims at his cost. There was also judgment against Employers in the amount of $4,500.00, plus interest and costs, said amount being the costs of defending the suit by McWilliams and its executive officers. This appeal followed after the denial of motions for a new trial.
THE CONTINUANCE ISSUE
The pertinent Articles of the Louisiana Code of Civil Procedure are 1601 and 1602. They provide:
Article 1601
"A continuance may be granted in any case if there is good ground therefore."
Article 1602
"A continuance shall be granted if at the time a case is to be tried, the party applying for a continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance."
Under Article 1601 a continuance rests within the sound discretion of the trial court, and appellate courts are reluctant to interfere. Armstrong v. State Farm Fire & Casualty Co., 423 So.2d 79 (La.App. 1st Cir.1982). Under Article 1602, a party moving for a continuance has the burden of proving that his motion falls within these peremptory grounds. Armstrong, supra. Furthermore, the requesting party must have exercised due diligence, yet been unsuccessful in obtaining the material evidence. Estopinal v. Thomas, 273 So.2d 54 (La.App. 4th Cir.1973). The materiality of the missing evidence must be demonstrated. Gallin v. Travelers Insurance Co., 323 So.2d 908 (La.App. 4th Cir.1975), writ denied 329 So.2d 452 (La.1976).
Although Collier could make serious arguments under Article 1602 based on his allegation that his physical condition seriously deteriorated the month before trial and therefore additional medical evidence was needed, we find no proof whatsoever to substantiate this allegation. We are convinced, however, that Collier was not ready for trial on September 16, 1982, whether due to his medical condition or due to his attorney's lack of preparation. Since this matter has been pending since December of 1976 we tend to believe that Collier's attorney was lacking in diligence in preparing the matter for trial. We also believe that the lack of preparation is in no way attributed to the plaintiff himself. Hence this court is faced with the problem of weighing the harsh remedy of depriving plaintiff his day in court, with the strict adherence to the rules of procedure allowing continuances.[1]
In considering the question of whether or not the trial court erred in refusing to grant a new trial where a default judgment was rendered, our brethren of the Second Circuit in Terra Builders v. International Paper Company, 445 So.2d 79 (La.App. 2nd Cir.1984), writs denied 446 So.2d 1226, stated:
"It does not appear that the defendant had notice that an answer had not been filed or that plaintiff intended to take a default. The defendant did not realize until after confirmation of the default that its attorney had failed to file an answer.
The failure of the defendant to file an answer is in no way attributable to its own neglect, as defendant relied on its retained counsel to represent it in this matter ...
* * * * * *
In light of the circumstances of this case, we conclude the trial court abused its discretion in denying the defendant's *723 new trial application. A miscarriage of justice will result if the defendant is not afforded the opportunity to defend this substantial and complex action on its merits." Id. at 81, 82.

Our courts have not been hesitant to reverse the trial court's rulings where a miscarriage of justice will result, especially where the cause is not attributable to the client, but to his attorney's neglect. We feel such is the situation in the instant case. Collier has been deprived of his day in court through no fault of his own. Fairness, equity and justice require us to see that he gets the opportunity to be heard. Therefore we reverse the judgment dismissing his claim and remand for trial on the merits. We do not intend by this opinion to condone an attorney's neglect in fulfilling his professional responsibilities. There may be circumstances in other cases where the opposite result may be appropriate. However, under the facts of the instant case we are of the opinion that justice requires we give Collier his day in court.
EMPLOYERS' DUTY TO DEFEND
The judgment below awarded McWilliams $4,500.00 against Employers[2] as the costs of defending the suit.
The jurisprudence relating to an insurer's duty to defend is well settled and has remained unchanged since the Supreme Court's ruling in American Home Insurance Co. v. Czarniecki, 230 So.2d 253 (La. 1969) wherein the Court stated:
"Generally the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. And the insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. (Citations omitted).
Thus, if assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Additionally, the allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend the suit brought against its insured." (Citations omitted). Id. at 259.

Collier's original petition alleges in pertinent part:
"Petitioner sandblasted for the various defendants for approximately the last 18 years on various occasions."
* * * * * *
"As a direct and proximate result of the negligence of the aforesaid defendants, petitioner contracted advanced silicosis with massive fibrosis."
The supplemental petition filed in June of 1977 further alleged that Collier worked for William McWilliams during the year 1962 through 1967. Employers' policy was in existence from April, 1964 thru July 1, 1970, and contained the following provisions.
"COVERAGE ABODILY INJURY LIABILITY
COVERAGE BPROPERTY DAMAGE LIABILITY
The company will pay ... because of
Coverage A. bodily injury or
Coverage B. property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit ... even if any of the allegations ... are groundless, false or fraudulent ..."
* * * * * *
"DEFINITIONS
* * * * * *
"`occurrence' means an accident, including injurious exposure to conditions *724 which results, during the policy period, in bodily injury ..."
Employer argues that the application of the manifestation theory whereby no bodily injury takes place until the disease becomes apparent would relieve them of a duty to defend in the instant case. They urge a simple reading of the definition of "occurrence", along with the principles set out in Carter v. Avondale Shipyards, Inc., 415 So.2d 174 (1982) should substantiate their position. We disagree. First, Carter, supra, is distinguisable from the instant case in that it dealt with a workman's compensation claim against two of claimant's former employers. The ultimate determination made in that case was which employer was to be liable for the compensation benefits. Our Supreme Court directed its attention to the specific provisions of the Workman's Compensation statute in determining that Avondale as the employer wherein the disease manifested itself, should bear the burden of compensation payments. The Court did not rule out the possibility of other employers sharing in the burden, but decided that such an issue would be a policy decision best left to the legislature.
In the instant case we are not dealing with ultimate liability on the merits, but a "duty to defend" under a general liability policy. Employers' lengthy arguments concerning the evidence presented at trial is irrelevant. The only consideration is whether the allegations of plaintiff's petition, if assumed to be true, would mandate coverage and thus the duty to defend. Collier alleged he worked for McWilliams during the period Employers had its policy in effect. As a result of that work he alleges he contracted silicosis which did not manifest itself until 1976. In Quick v. Murphy Oil Co., 446 So.2d 775 (La.App. 4th Cir. 1982), writ denied 447 So.2d 1074 (La.1984), this Court, in deciding when a cause of action for silicosis arises, stated:
"We have concluded that in the unique circumstances presented by cases of cumulative diseases such as silicosis, it is the contraction of the disease which creates a cause of action and not the later manifestation of the consequences of that disease. To hold otherwise would be to ignore the facts. While the ultimate manifestation of the disease by physical disability may be convenient, easily fixed point at which to find a cause of action accrues we cannot disregard the fact that, but for the earlier contraction of the disease, there would be no symptoms to manifest themselves.
The problem with this approach is that it is extremely difficult to accurately fix the point in time at which the disease is contracted. This difficulty does not change the unavoidable reality that the disease existed in the sense that irreversible biological changes which inevitably result in disease and disability take place before manifestation of the condition by way of disability symptoms. There is universal medical opinion that the date of detection is not the date at which the disease is contracted." at p. 779.
The Court went on to find that for purposes of deciding an exception of no cause of action the only consideration is whether the allegations of the petitioner state that plaintiff contracted silicosis prior to the effective date of statute at issue.
Given this Court's approval of the exposure theory in the Quick case, supra, the allegations of Collier's petition clearly allege a cause of action during the policy period. That factor, coupled with the general policy enunciated in American Home Insurance Co., supra that the obligations to defend is much broader than an insurer's ultimate liability, we conclude the trial court was correct in holding that Employers was obligated to defend the instant suit. This portion of the judgment is therefore affirmed. Accordingly, this matter is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED IN PART, AFFIRMED IN PART AND REMANDED.
NOTES
[1] See Halley v. Halley, 457 So.2d 108 (La.App. 2nd Cir.1984).
[2] Commercial Union Insurance Company is designated in the judgment as the party cast in judgment since Employers either changed their name, or was taken over by Commercial Union. We have referred to this party as Employers so as to avoid confusion since there is another party in the suit named Commercial Insurance Company.