641 So.2d 592 (1994)
Arean MOORE, as Natural Tutrix of Her Minor Children, Traney Moore, Tasha Moore and Terrence Moore
v.
GENCORP, INC., Gencorp, Inc. of Ohio, Gencorp of Ohio, Inc. (General Tire and Rubber Company) and General Tire, Inc.
Betty BURKETT, Shelia Jenkins, Patsy Morgan and Sabrina Burkett
v.
GENCORP, INC., Gencorp, Inc. of Ohio, Gencorp of Ohio, Inc. (General Tire and Rubber Company) and General Tire, Inc.
Nos. 92-CA-2049, 92-CA-2050.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1994.
Rehearing Denied September 13, 1994.
*593 Richard S. Vale, Blue Williams, L.L.P., Metairie, for intervenor/appellant.
Lloyd W. Hayes, Katherine B. Muslow, Thomas, Hayes, Beahm and Buckley, New Orleans, for defendants/appellants.
Thomas L. Gaudry, Jr., Daryl A. Higgins, Windhorst, Gaudry, Ranson, Higgins & Gremillion, Harvey, for plaintiffs/appellants.
Before BARRY, PLOTKIN, JONES, WALTZER and LANDRIEU, JJ.
*594 WALTZER, Judge.
STATEMENT OF THE CASE
These consolidated cases were brought by the surviving companion and children of Wallace A. Griffin (the Moores) and by the surviving spouse and children of Ralph Burkett (the Burketts), seeking damages for their decedents' wrongful deaths, allegedly caused when a tire manufactured by defendant General Tire, Inc. (General) blew out, causing a single vehicle accident in which Griffin, the driver, and Burkett, his passenger, were killed. By amending petition, plaintiffs added General's liability insurer, Liberty Mutual Insurance Company (Liberty Mutual) as a defendant.
Employers Insurance of Wausau (Wausau) intervened to recover workers' compensation benefits it had paid and continued to pay as a result of Griffin's and Burkett's deaths.[1]
Mr. Griffin's widow and children (the Griffins) intervened to assert their own wrongful death claims, to which General excepted. The trial court granted General's exception of prescription. After having heard representations from counsel for the Griffins that he had conferred with his clients and that they understood the granted exception would terminate their rights in this litigation and that they did not intend to appeal the trial court's dismissal of their petition, and over defendants' objections, the trial judge ordered that the matter proceed to trial. Trial was held before a twelve-juror panel. The jury rendered a verdict on special interrogatories, finding:
[1]The tire in question blew out prior to the wheel striking the guard rail;
[2]The blow out of the tire was the result of a defect in the tire;
[3]The defect in the tire was the cause in fact of the accident resulting in the death of Mr. Burkett and Mr. Griffin;
[4]Mr. Griffin contributed in the degree of 20% to his own death;
[5] Mr. Burkett contributed in the degree of 20% to his own death;
[6] The total damages suffered by each of the plaintiffs was:

Arean Moore (funeral expenses) $ 3,097.15
Traney Moore 76,000.00
Tasha Moore 88,000.00
Terrence Moore 142,000.00
Betty Burkett (surviving
 spouse) 727,000.00
Shelia B. Jenkins 50,000.00
Patsy B. Morgan 50,000.00
Sabrina B. Pierre 50,000.00.

The trial court entered judgment on the jury's verdict on 19 February 1992, awarding:

Arean Moore $ 3,097.15
Traney Moore 60,800.00
Tasha Moore 70,400.00
Terrence Moore 113,600.00
Betty Burkett 581,600.00
Shelia B. Jenkins 40,000.00
Patsy B. Morgan 40,000.00
Sabrina B. Pierre 40,000.00

The judgment awarded expert fees, approved by the court, to:

Dr. Vincen (sic) Cefalu $ 200.00
John Taylor 350.00
John Rigol 200.00
Ronald Schoonover 250.00
Dr. Seymour Goodman 200.00
Ed Sebak 500.00
Tom Dodson 500.00
Raymond Burkart 200.00
Dr. Franklyn (sic) Griffith 200.00

All parties moved for a new trial. On 13 April 1992, the trial judge granted Wausau's motion for new trial, denied the motions by the Moores, Burketts and General for a new trial, and vacated the judgment of 19 February 1992. On 5 June 1992, the trial judge entered a "Supplemental and Amending Judgment", ordering that "the efficacy of the Judgment dated February 19, 1992 be recognized and given effect except as supplemented and amended herein." The judgment then annexed the stipulations concerning workers' compensation benefits paid and to *595 be paid, and entered judgment in favor of Wausau and against the Burketts in the amount of $36,463.09 (the stipulated payments reduced by the 20% comparative fault found by the jury), and against the Moores in the amount of $41,479.36 (the stipulated payments reduced by the 20% comparative fault found by the jury), and for all compensation paid from the date of the stipulation (10 February 1992) through the date of final judgment.
From that judgment, all parties have appealed.
Two days following the jury's verdict, counsel for the Griffins appealed the trial court's dismissal of their intervention on defendants' exception of prescription. The trial court's judgment of dismissal was affirmed by this Court in Moore v. Gencorp, Inc., 615 So.2d 1092 (La.App. 4th Cir.1993), 92-CA-0674. The Louisiana Supreme Court granted a writ of certiorari on 18 June 1993 in Moore v. Gencorp, Inc., 619 So.2d 556 (La. 1993), 93-C-0814. On 22 March 1994, the Supreme Court rendered an opinion in that case reversing the judgment of the court of appeal, overruling the defendants' exception of prescription and remanding the case to the trial court for further proceedings consistent with the Supreme Court's opinion. Moore v. Gencorp, Inc., 633 So.2d 1268 (La.1994).
STATEMENT OF FACTS
On 2 June 1987, Wallace A. Griffin and Ralph L. Burkett, employees of Graebel New Orleans Movers, were travelling on Interstate 55 in Tangipahoa Parish, Louisiana, in the course and scope of their employment. Griffin was driving and Burkett was a passenger in a 1979 Chevrolet Van, Model 6000. Griffin and Burkett had stopped previously and consumed several beers. Griffin's blood alcohol level was .013%. They were driving with both doors of the van open, and with their seat belts unfastened when, according to the eyewitness, Clay Stelly, the van suddenly veered sharply to the right, and apparently without having struck any road hazard, bounced off the guard rail, whereupon the occupants fell through the open doors of the van to their deaths.
Jerry Patrick, the State Trooper who investigated the accident, concluded that the accident was caused by tire failure, basing this conclusion solely on his recollection of rotational gouge marks on the side of the roadway and Stelly's testimony relating to the van's performance prior to and at the time of the accident. Patrick admitted he did not take a picture of the alleged gouge marks, that had the gouge marks been present they should have been photographed, and that he did not show the gouge marks to anyone at the scene of the accident. None of the witnesses who visited the scene of the accident at a later time found any evidence of these alleged gouge marks.
Plaintiffs introduced testimony of three experts on the issue of the tire's defective condition prior to the accident.
John Taylor, an expert in mechanical engineering with a sub-specialty in auto tire engineering, design testing and tire failures, testified that the tire had not been run in an under-inflated condition prior to the accident, had failed prior to impact and the failure was caused by a breakdown in the tire's adhesion system. Taylor based his opinion that the tire had not run underinflated for a substantial period of time on the absence of discoloration or cracking in the tire's inner liner. However, Taylor, who left the tire industry in 1980, was apparently unaware that subsequent technology eliminates this effect. The newer technology uses a tri-blend of corabutal, a blend of synthetic and natural rubbers, for the inner liner. This product allows the tire to sustain higher heat and to discolor at a higher temperature than formerly, so that this tire, run underinflated, would not present the discoloration on which Taylor relied in formulating his opinion.
John Rigol, Jr., an accident reconstruction specialist, based his opinion that the tire had failed before impact with the barrier on Stelly's testimony that the vehicle swerved to the right before impact and on Patrick's allegations of rotational gouge marks on the pavement, both of which would be consistent with pre-impact tire failure. Ronald Schoonover, an expert in tire production, testified that the tire failed because of an inadequate adhesion system which caused separation of the component parts of the tire that so weakened the *596 tire's structure that it blew out. All expert testimony submitted by plaintiff supported a claim of manufacturing defect. There was no evidence of a design defect, failure to warn, or of prior similar accidents.
The defendant's expert accident reconstruction witnesses, Ray Burkart and Dr. Oscar Franklyn Griffith, testified that even if a blow-out had occurred, had the driver's hands been on the steering wheel, the vehicle would not have veered abruptly to the right striking the barrier. These witnesses found the opinions expressed by plaintiff's experts to be inconsistent with the physical evidence, particularly the tire marks and bumper marks made by the van upon impact with the barrier.
Ed Sebak, a General Tire design engineer, testified as an expert in tire design, manufacturing and failure analysis. He concluded that the tires had run under-inflated over an extended period of time, which created excessive heat which, in turn, diminished the adhesive qualities of the tire's components. Sebak pointed out signs of under-inflation in the tire: cracking along the tire's edge, decompression grooves and erosion near the sidewall, slight opening of the sidewall portion of the tire's inner liner splice while the crown under the belt remained intact, and the presence of a plug made of fibrous material, which Sebak characterized as an improper repair as well as a cause of under-inflation.[2] There is no conflict as to the appearance of this fiber plug in the tire. Plaintiffs offered no proof that the tire left the factory with the plug. Testing by the defendants' expert witness showed that the tire leaked at the plug, causing the tire to be underinflated, while Schoonover testified that his test of the plug showed it to be sealed properly.
Thomas Dodson, a tire designer and consultant qualified as an expert in tire design manufacturing, testing, failure analysis, performance and accident reconstruction as related to tires, confirmed Sebak's testimony that the fibrous plug was an improper repair which leaked, contributing to the tire's chronic under-inflation.
Burkart, an expert in accident reconstruction, likewise testified that the accident was not caused by a defective tire. While the rain had washed the tire marks from the barrier hit by decedents' truck, a bumper scrape was still visible when Burkart made his inspection. Burkart testified that the height of this scrape mark, 14 inches from the pavement, was exactly the height of the van's bumper when the tires are full of air. In his opinion, the scrape would have been several inches lower had the tire blown out prior to impact with the barrier. He and Dr. Griffith, an expert in physics specializing in accident reconstruction, reenacted the accident at the place of impact with the step van under two conditions, with tires inflated and with tires deflated, and noted that the impact area was at the height of the scraped area when the tires were inflated, but was below the scraped area when the tires were deflated. Griffin and Burkart concluded that if the tire had been flat as it struck the barrier, the van's bumper would not have scraped the barrier at the point of the mark. This physical evidence was not considered or addressed by plaintiff's experts.
DEFENDANTS' MOTION TO REMAND
General and Liberty Mutual moved to remand this matter to the trial court, alleging that the decree of the Louisiana Supreme Court reversing the judgment of this Court affirming the trial court's dismissal of the Griffins' intervention on defendants' exception of prescription divests this Court of jurisdiction over the appeal of the principal demands herein and that the Louisiana Supreme Court decree remands the entire case to the Civil District Court for the Parish of Orleans.
We find that the trial judge had discretion to try the principal demands separately from the intervention. LSA-C.C.P. 1038. We find further that there is no evidence of prejudice to the parties in the trial court's decision to proceed to trial prior to the expiration *597 of appeal delays in connection with the Griffins' dismissed intervention, in light of the representations made by counsel for plaintiffs and intervenors.
General and Liberty Mutual did not cite authority for their divestiture argument, relying on the penultimate language of the Supreme Court opinion: "REVERSED AND REMANDED TO THE TRIAL COURT." The Supreme Court opinion does not purport to affect the instant appeal and does not address the propriety or wisdom of the trial court's separation of the principal demands and intervention for purposes of trial. The language of the decree does not by its own terms remand the entire case to the trial court.
We have examined the writ application and briefs filed in the Louisiana Supreme Court in order to ascertain the information before the Supreme Court so that our decree might be consistent with that Court's intent.
In the original writ application, counsel for intervenors and plaintiffs told the Court:
"[T]he main demand was tried during the week of February 10, 1992, and a judgment was rendered in favor of those plaintiffs on February 19, 1992." [Writ application, page 2, "Proceedings in the Courts Below".]
Appended to the writ application was a copy of the judgment of 19 February 1992 and the jury's verdict on special interrogatories awarding damages to the various plaintiffs.
In the original opposition brief to the writ application, counsel for defendants told the Court:
"Despite defendant's objection to proceeding to trial until the time delays for appealing the judgment on prescription had run, the main demand of Arean Moore was subsequently tried during the week of February 10, 1992. The court's order to proceed to trial was based on the representations of both Mr. Gaudry and Mr. Higgins (counsel for both the Griffins and the Moores) that the Griffins did not intend to appeal the judgment on prescription. A Judgment was rendered in favor of the Moores on February 13, 1992. Two working days later, February 16, 1992, contrary to their prior representations to the court, Mr. Gaudry and Mr. Higgins, on behalf of the Griffins, appealed the judgment on prescription."
In the supplemental brief on behalf of respondents, counsel for defendants told the Court:
"At the final pre-trial conference, defendants objected to proceeding to trial on the main demand of Arean Moore which was scheduled to begin the week of February 10, 1992. The only reason defendants objected to proceeding to trial on that date was that the time delays for the Griffins to appeal the Judgment on prescription had not run. Defendants expressed to the court that they were concerned that if the Griffins appealed the judgment on prescription and were later reinstated as plaintiffs in the instant litigation, an additional trial would be necessary subjecting defendants to additional costs and expenses and the possibility of inconsistent verdicts or judgments. However, both Mr. Higgins and Mr. Gaudry, (counsel for both Arean Moore and the Griffins) represented to the court that they had no intention of appealing the dismissal on prescription and that they had in fact discussed the matter with the Griffins and informed them that there would be no appeal. Based upon Mr. Higgins and Mr. Gaudry's representations, the court ordered that the parties proceed to trial." [Emphasis added.]
Authority for the trial court's action is found in LSA-C.C.P. art. 1038:
"The court may order the separate trial of the principal and incidental actions, either on exceptions or on the merits,...."
Counsel for plaintiffs herein, who also represents the intervenors, admitted during oral argument that the trial judge, in bringing the principal case to trial, relied on counsel's statement that the ruling on the exception of prescription would not be appealed. Indeed, the transcript of the hearing on the parties' motions for a new trial contains the following unequivocal comments:
[Counsel for defendants]: "If you recall before you (sic) brought a motion to continue *598 before that, you denied it based on the representation made to you."
[Trial judge]: "No question. I remember quite clearly and we're putting all of this in the record, I remember quite clearly counselor, you making that statement. Judge, what happens if that family is entitled to some claims, and I said, certainly we could not proceed or we should not proceed or we should not proceed if there was any possibility, being assured by counsel [for plaintiffs and intervenors] that there was, that this had been discussed and there was no problem, ... those people had a right to change their mine (sic) but the lawyer did not have a right to represent them, and that is the point that bothers me more than anything else...."
In response to plaintiff's counsel's suggestion that the matter was ready for trial and was properly not continued pending the expiration of the appeal delay, the trial judge said:
"... I will go before the Court of Appeals or the Supreme Court or the Bar Association or anybody else and tell them that you represented to me that you had discussed the matter with them and that they understood that the prescription would be bar (sic) them from any rights, and you represented that and Mr. Hayes [counsel for defendants] continued to press, continue (sic) to press he said, Judge, you don't want to have to try this case twice.... I think it was unethical for you to accept their appeal."
Clearly, Judge Ortique relied in good faith on the plaintiffs' and intervenors' attorney's assurance that he had discussed the matter with the intervenors and they would not appeal the granting of defendants' exception of prescription.
The granting or denial of a motion for continuance is, like the decision to proceed to try separately the main demand and the intervention, within the sound discretion of the trial court, with which appellate courts are reluctant to interfere. Collier v. Williams-McWilliams Company, 459 So.2d 719 (La.App. 4th Cir.1984), writ denied, 462 So.2d 1246 (La.1984).
We believe that in this case, the trial judge's "discretion" under LSA-C.C.P. art. 1038 and under the Collier decision, was not abused, and deny the Motion to Remand.
GENERAL'S AND LIBERTY MUTUAL'S ASSIGNMENTS OF ERROR
General and Liberty Mutual contend that the jury erred in finding General liable for defects in the tire when the physical evidence established that the tire was not deflated when it struck the barrier. We find the trial court's instructions to the jury concerning the liability of Gencorp for manufacturing defect and concerning comparative negligence to be incomplete statements of the applicable law, but we find there is sufficient evidence of record to support the jury's finding of liability herein.
In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993).
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).
The appellate review is not completed, however, merely by reading only so much of the record as will reveal a reasonable factual basis for the finding of the trial court. Rosell *599 v. ESCO, 549 So.2d 840, 844 (La.1989). Indeed, we are constrained to find manifest error "[w]here documents or objective evidence so contradict the witness's (sic) story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's (sic) story." Rosell, supra at 844-845.
In this case, the jury was presented expert opinion evidence by both plaintiffs and defendants. They accepted the view of the accident expressed by those witnesses called in support of plaintiffs' case, and apparently chose to disregard the testimony of defendants' experts that the physical evidence was inconsistent with a pre-impact flattening of the tire. In making the determination of whether the manifest error standard was breached, we are guided by the Louisiana Supreme Court's holding in Rosell, supra.
Applying this standard, we cannot say that the jury's findings that the tire in question blew out prior to impact with the guard rail as a result of a defect in the tire which was a cause in fact of the accident resulting in decedents' deaths was manifestly erroneous. This finding by the trier of fact rejects objective evidence that the tire was inflated at the time of impact with the barrier, and thus decedents' deaths were not caused by a manufacturing defect; however, it is clear that the jury chose to believe the testimony of the investigating officer to the effect that rotational gouges in the pavement demonstrated that the tire was deflated prior to impact with the guard barrier. This credibility determination is not to be disturbed on appeal. See, Rosell, supra.
General and Liberty Mutual contend further that the trial court erred in the following respects:
It was error to fail to instruct the jury properly concerning the law applicable to the wearing of safety belts;
It was error to order the parties to proceed to trial before the time delays for appealing the trial court's judgment maintaining defendants' plea of prescription had not run.
The trial court instructed the jury that decedents' failure to use safety belts in a commercial vehicle was not to be considered contributory negligence on their parts. The accident took place in 1987. The seat belt law in place at that time, LSA-R.S. 32:295.1(A) applied only to drivers and front seat passengers in "passenger cars," and provided a limit on the degree of comparative negligence assessable for violation of the law. Thus, the decedents' failure to wear their seat belts was not a violation of the statute. LSA-R.S. 32:295.1(E) provided that failure to wear a safety belt "in violation of this section" could be admitted to mitigate damages under certain conditions and within certain limits. Since the decedents were not riding in a passenger car at the time of the accident, their actions were not "in violation of ... section [LSA-32:295.1 E]," and the trial judge's statement of the law was correct.
The fact that the jury found the decedents' fault to have contributed 20% to their deaths is an indication that the jury did consider the evidence in its entirety and reach a verdict that was not inconsistent with that evidence, and did not consider the judge's instruction concerning the seat belt law as a complete bar to consideration of decedents' other acts constituting comparative fault.
Defendants argued that the jury verdict should be reversed, contending that the jury instructions on the law of products liability were substantially identical to the instructions given by the same trial judge in The State of Louisiana, et al. v. The Ford Motor Company, et al., 634 So.2d 412 (La. App. 4th Cir.1994), and found therein to constitute reversible error. While counsel argued this error, it was not briefed and, pursuant to Rule 2-12.4, Uniform RulesCourts of Appeal, we determine defendants have waived this contention of error.
THE MOORES' AND BURKETTS' ASSIGNMENTS OF ERROR
The Moores and Burketts contend that the jury award is erroneous in the following particulars:
The jury's finding of comparative fault and its assessment of 20% comparative fault against decedents constituted an abuse *600 of discretion and is not supported by the evidence;
As a matter of law, the finding of contributory fault is erroneous;
The award to the six surviving children is excessively low, inadequate and constitutes an abuse of the jury's discretion;
The trial court should have granted plaintiffs' motions for new trial or judgment notwithstanding the verdict based on the foregoing grounds;
The judgment awarding reimbursement to the compensation insurer for compensation payments made fails to assign reimbursement against a particular class of damages awarded to plaintiffs and improperly assesses judgment against the plaintiffs rather than the defendant.
We find that under the manifest error standard set out infra, there is adequate evidence to support the jury's finding of 20% comparative fault. Each decedent chose to open the van door immediately adjacent to his seat, leaving him exposed from the van's floorboard to its roof and from the dashboard to behind his seat. The decedents rode in this condition, while travelling on an interstate highway at normal highway speed. The evidence is clear that the damage to the step van was merely cosmetic, and it was reasonable for the jury to have concluded that had the decedents been driving with the doors closed, they would not have sustained their fatal injuries. The jury's finding of 20% comparative fault is amply supported by the record and is not manifestly erroneous. See, Stobart, supra.
Plaintiffs contend that the judgment is erroneous in failing to disallow the jury's assessment of comparative fault and in denying plaintiffs' motions for new trial and for judgment notwithstanding the verdict. The trial judge observed the witnesses, and found no reason to substitute his judgment for that of the jury; we will not disturb that determination. See, Stobart, supra.
We find the awards of damages to the decedents' surviving children are within the discretion granted to triers of fact. An expert economist, Dr. Seymour Goodman, testified that the three Moore children experienced an economic loss of support in the following amounts:

Traney Moore $26,789.08
Tasha Moore 38,866.00
Terrence Moore 92,077.45

The jury award to each of these children was approximately $49,000 more than this economic loss figure. The adult Burkett children each received an award of $50,000 for unspecified general damages.
The standard for appellate review of general damage awards is difficult to express and is generally non-specific, and the requirement for an articulated basis for disturbing such awards gives little guidance. Nevertheless, the theme that emerges from the jurisprudence of this state is that "the discretion vested in the trier of fact is `great,' and even vast, so that an appellate court should rarely disturb an award of general damages." Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
It is only where the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of this particular injury to these particular plaintiffs under the circumstances of this case that this Court should increase or reduce the jury's award. Youn, supra. Plaintiffs have not shown such unreasonableness in these awards; therefore, under the Louisiana Supreme Court's standard set out in Youn, supra, we affirm the awards.
We note that the judgment rendered below fails to deduct 20% of the amount awarded Arean Moore to reflect decedent's comparative fault, and we correct this clerical error by amending that award, reducing it to $2,477.72.
Plaintiffs also assign as error the trial court's determination of fees for plaintiffs' expert witnesses. We find no manifest error in these awards. The trial judge had the opportunity to participate in the qualification portion of each expert's testimony, to evaluate their individual backgrounds and levels of experience and qualification in the areas of expertise in which each testified. The trial judge likewise heard the experts' descriptions of their investigations and was in an excellent position to evaluate the proper *601 expert fee for each of these witnesses. We will not disturb his findings. See, Stobart, supra.
Plaintiffs assign as error the supplemental and amending judgment assessing reimbursement for workers' compensation benefits paid by Wausau to certain of the plaintiffs on the following grounds:
[1] It fails to discriminate as to the amount of the award to Wausau which is assessable against each individual plaintiff, and fails to distinguish from which class of damages each such award was made;
[2] It renders judgment in favor of intervenor and against plaintiffs, rather than against defendants;
[3] It awards intervenor legal interest from the date of judicial demand;
[4] It fails to assess attorneys' fees and costs due the plaintiffs under Moody v. Arabie, 498 So.2d 1081 (La.1986).
Our review of the record leads us to conclude that further proceedings in the trial court are necessary to insure that appropriate reimbursements are made to the intervenor and to plaintiffs' counsel.
The "Supplemental and Amending Judgment" fails to impose liability on the third party tortfeasor, General Tire, Inc.; it fails to apportion the reimbursement against the awards to the respective plaintiffs who received compensation, and it fails to deduct the 20% comparative fault portion from reimbursement of payments, if any, made after 10 February 1992. See, LSA-R.S. 23:1101(A) and (B). We reverse that portion of the judgment and direct that judgment be entered in favor of Wausau and against General in the amount of $80,281.81 and further in the amount of 80% of compensation payments made by Wausau to plaintiffs herein from 11 February 1992 through 5 June 1992. We remand the case to the trial court for determination of the amount, if any, paid by Wausau to plaintiffs from 11 February 1992 through 5 June 1992.
We must also remand to the trial court the determination of the amount of reimbursement due from Arean Moore's award for funeral damages. The "Joint Stipulation" entered into between Wausau, Gencorp and counsel for the Moore/Griffin plaintiffs provides that Wausau paid workers' compensation benefits in the total amount of $54,773.40 as of 10 February 1992; of that amount $51,849.20 represented death benefits and $3,000 represented statutory funeral benefit paid. The stipulation thus is inconsistent in that the sum of the stated funeral benefit ($3,000) and the stated death benefits ($51,849.20) is $54,849.20, not the total of $54,773.40 recited in the stipulation. This Court is unable to reconcile the numbers provided in the stipulation and remands the matter for resolution by the trial court.
The Louisiana Supreme Court allowed recovery of attorneys' fees from a successful compensation intervenor in the circumstances of this case. Moody v. Arabie, supra. In setting the amount of such recovery, the court is directed to determine the intervenor's proportionate interest in the recovery and the necessary and reasonable expenditures and obligations incurred in the recovery, while weighing these expenditures and obligations against the ethical standards applicable to such obligations. The record before us is insufficient to allow us to make such a determination, and we remand the case to the trial court in order that such a finding, consistent with the standards set out in Moody v. Arabie, supra, may be made.
The matter is remanded to the trial court in order that the following determinations may be made with respect to the reimbursement of 80% of the workers' compensation benefits paid by Wausau to the plaintiffs individually:
[1] the appropriate reduction in the award to Betty Burkett for funeral, medical and ambulance expenses and widow's benefits paid through the date of final judgment;
[2] the appropriate reduction in the award to Sabrina Burkett of death benefits paid through 22 June 1988;
[3] the appropriate reduction in the award to Arean Moore for funeral expenses;
[4] the appropriate reduction in the awards to Traney Moore, Terrence Moore and Tasha Moore of death benefits paid through the date of final judgment; and *602 the appropriate award of attorneys' fees and costs due plaintiffs from Wausau.

WAUSAU'S ASSIGNMENTS OF ERROR
Wausau contends that the trial court erred in rendering a judgment:
[1] that was improperly styled;
[2] that cast plaintiffs in judgment for sums that were defendant's responsibility;
[3]that failed to specify how the awards to the plaintiffs were to be reduced to satisfy Wausau's intervention, and
[4]that failed to provide language that would allow the parties to satisfy the judgment.
In light of our action in disposing of plaintiffs' assignments of error, these matters are moot.
AFFIRMED IN PART, AMENDED, REVERSED IN PART AND REMANDED.
PLOTKIN, J., dissents with written reasons.
LANDRIEU, J., dissents with reasons.
PLOTKIN, Judge, dissenting with written reasons:
Because I believe that the trial court's incorrect jury instructions on the products liability issue constitute reversible error, I respectfully dissent from the majority's decision to affirm on this issue. I would reverse the jury verdict on that issue and perform a de novo review. Alternatively, I would remand to the trial court for retrial because of the unique procedural circumstances presented by this case.
In the instant case, the trial judge gave substantially the same products liability jury charge as the same trial judge gave in Clement v. Griffin, 634 So.2d 412, 429 (La.App. 4th Cir.1994), writs denied 637 So.2d 478, 479 (La.1994). In that case, this court found that the trial judge's decision to instruct the jury concerning a "design defect" over the objection of the defendant, despite the fact that the plaintiffs had failed to produce any evidence of a design defect, was "so improper and misleading as to constitute reversible error by itself." Slip op. at fn. 4. The same rule should apply to the instant case, since a review of the record reveals that the plaintiff's tire failure theory, as in the Clement case, was based on defective manufacture, not defective design. Like Clement, the jury instructions in this case allowed the jury to infer a defect in the tire from the fact that the blowout occurred, contrary to the applicable jurisprudence which consistently holds that "[f]ailure of a tire is not such an unusual event that a defect can be inferred solely from the fact that the accident occurred." Broussard v. Pennsylvania Millers Mutual Insurance Co., 406 So.2d 574 (La.1981).
The majority fails to consider this issue on the basis of the fact that the defendant failed to brief this trial court error. The majority cites Uniform Rules, Court of Appeal, Rule 2-12.4 as authority for its refusal to consider this clear error on the part of the trial judge. That rule provides, in pertinent part, as follows:
All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed.
Unquestionably, the defendant in this case failed to brief the trial court's error in giving the improper jury instruction on design defect. However, the use of the permissive word "may" in the above rule indicates that an appellate court has discretion to consider errors not briefed by the parties if the circumstances warrant such consideration. This interpretation of the rule is supported by La.C.C.P. art. 2164, which provides, in pertinent part, as follows:
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal.
The above article, especially when combined with the discretionary nature of Rule 2-12.4, gives this court the authority to consider any error made by the trial judge in determining whether justice was done. Further, I believe that the special factual circumstances surrounding this case make it impossible for this court to render a judgment which is "just, legal, and proper upon the record on appeal" without considering the *603 defendant's oral arguments concerning the improper products liability jury instruction.
Initially, I would note that, although the defendant did not brief the alleged error in the products liability jury instructions, the defendant did object to the jury instruction at the trial level, and the defendant did raise the error in his oral argument to this court. Thus, the defendant was obviously aware of the deficient nature of the jury instructions. However, at the time that the defendant filed its brief in this court, no positive law existed to support the defendant's position that the jury instruction was incorrect. However, between the time the defendant filed its brief and the time the defendant presented oral argument in this court, the Clement decision was released. Only after the release of Clement did the defendant have any legal support for its position that the products liability jury instruction was incorrect. When Clement was released, the defendant immediately brought to this court's attention the fact that the jury instruction in this case was indeed incorrect under the most recent statement of the law. Under the circumstances, the defendant exercised great diligence in bringing this issue to the court as soon as possible. I would not penalize the defendant for failure to brief an issue which was not relevant at the time his brief was filed.
Thus, I would find, as this court found in Clement, that the products liability jury instructions on a possible design defect constituted reversible error which entitled the defendant to a de novo review of the evidence to determine whether the plaintiffs proved by a preponderance of the evidence that the accident was caused by a blowout of the tire. I note that the failure to perform a de novo review of the evidence in this case is prejudicial to the defendant since much of the evidence indicates that the tire was inflated at the time the van struck the barrier on the interstate, revealing that the accident was probably caused solely by driver error. I have not performed a de novo review, so that result is not certain, but I do believe that the failure to consider the evidence de novo is prejudicial to this defendant.
Alternatively, because of the unique procedural circumstances surrounding this case, I would grant the defendant's motion to remand for retrial, in lieu of a de novo review. Although the majority is correct in stating that the Louisiana Supreme Court's order remanding the case for consideration of the claims of the intervenors does not purport to affect the parties to this action, the reversal of the trial court's finding that the intervention has prescribed and the remand of the case for consideration of the claims of the intervenors means that the trial court will be forced to reconsider the evidence in this case anyway. Considering the fact that the pronouncement in the Clement case is now the law on jury instructions concerning design defects, the trial court's consideration of the liability of the defendants will be controlled by the conclusions in Clement. Thus, the result in the intervention could be very different from the result in the instant case. Further, the Supreme Court's insistence that this court consider the evidence de novo when the record is complete, rather than remand, is consistently based on judicial economya concern that the trial court not be required to reconsider the same evidence when all the evidence is available to allow this court to make a decision. However, in the instant case, the trial court will have to consider the evidence a second time under any circumstances; thus, requiring this court to perform a de novo review would be counterproductive to the Supreme Court's typical major consideration of judicial economy. Therefore, I believe that under the circumstances remand would be appropriate.
LANDRIEU, Judge, dissenting with reasons.
Given the restricted standard of review available to appellate courts, it is increasingly imperative that juries be properly instructed.
I would remand the entire case to the trial court for a new trial.
NOTES
[1] The parties stipulated that as of 10 February 1992 Wausau paid the Burketts $41,670.11 in death benefits, $3,000 as the statutory funeral benefit, and $908.75 for medical and ambulance expenses. The parties further stipulated that as of that date Wausau paid the Moores $51,849.20 in death benefits, and $3,000 as the statutory funeral benefit. The parties stipulated that Wausau was entitled to recover these amounts paid or to be paid in accordance with law.
[2] Plaintiff offered no evidence that the tire left the General factory with this fibrous plug. The uncontradicted testimony is that this was an improper repair. Plaintiff offered no evidence that the repair was made by, under the direction of, or upon advice of the defendant; neither did plaintiff sue the owner of the van on the basis of its negligent repair of the tire.