684 So.2d 488 (1996)
Francis Carl OAKLEY
v.
David THEBAULT, XYZ Insurance Company, et al.
No. 96-CA-0937.
Court of Appeal of Louisiana, Fourth Circuit.
November 18, 1996.
*489 Thomas E. Campbell, Jacqueline A. Campbell, Metairie, for Plaintiff/Appellant.
Benj. R. Slater, III, Mark E. Van Horn, Donald J. Miester, Jr., Slater Law Firm, New Orleans, for Defendant/Appellee.
Before CIACCIO, PLOTKIN and LANDRIEU, JJ.
PLOTKIN, Judge.
Plaintiff Francis Carl Oakley appeals a trial court judgment granting a motion for summary judgment in favor of defendant Norfolk Southern Railway Company (hereinafter "NSRC"). We amend the trial court judgment to dismiss NSRC from the case with prejudice, and affirm as amended.

Facts and procedural history
Oakley filed suit to recovery damages for injuries he suffered in a August 14, 1992 vehicular collision involving Oakley's car and another vehicle driven by defendant David Thebault. The accident occurred at the uncontrolled intersection of Dauphine Street and Press Street in the City of New Orleans. Oakley claims that he was travelling on Dauphine, a heavily-travelled through street, while Thebault was travelling on Press Street, which runs parallel to railroad tracks owned by NSRC and on top of the railroad right of way at that point. Press Street is only a few blocks long, Oakley alleges, and is designed solely to provide access to railroad warehouses located near the Mississippi River.
Named among the defendants in Oakley's suit were NSRC, the City of New Orleans, the Parish of Orleans, and the State of Louisiana; Oakley claims that those defendants negligently failed to provide traffic controls at the subject intersection. NSRC filed a motion for summary judgment, which was granted by the trial court. Oakley appealed. NSRC answered the appeal, contesting the trial court's judgment to the extent that it dismissed NSRC from the case without prejudice.

Standard for deciding motion for summary judgment
The standard for reviewing a motion for summary judgment was recently stated by this court in Daniel v. Blaine Kern Artists, Inc., 96-1348 (La.App. 4th Cir. 9/11/96) 681 So.2d 19, as follows:
Appellate courts review summary judgments de novo. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and *490 whether the mover is entitled to judgment as a matter of law. In determining whether an issue is "genuine," courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence.
Procedurally, the court's first task on a motion for summary judgment is determining whether the moving party's supporting documentspleadings, deposition, answers to interrogatories, admissions and affidavitsare sufficient to resolve all material factual issues. LSA-C.C.P. art. 966(B).
681 So.2d at 20.
If the court finds that a genuine issue of material fact exists, summary judgment must be rejected. Walker v. Kroop, 96-0618 (La. App. 4th Cir. 7/24/96), 678 So.2d 580, 584. Thus, the burden does not shift to the party opposing the summary judgment until the moving party first presents a prima facie case that no genuine issues of material fact exist. Id. At that point, the party opposing the motion must "make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial." La. C.C.P. art. 966(C).
This court has previously gone on record to say that the 1996 amendments to La. C.C.P. art. 966(C) do not change the existing law concerning genuine issues of material fact and burdens of proof applied to a summary judgment proceeding. See Daniel, 681 So.2d at 20-21; Walker, 678 So.2d at 583-84; Short v. Giffin, 96-0361, slip op. at 2 (La.App. 4th Cir. 8/21/96), 682 So.2d 249, 251. However, the amendment did make a change in the law to the extent that it now proclaims that summary judgments are "favored" and thus the rules should be liberally applied, which requires courts to change their attitudes when reviewing motions for summary judgment from the attitudes required under the pre-amendment jurisprudence which proclaimed just the oppositethat summary judgment were not favored and thus should be strictly construed. The language of the amendment tracks the language of Federal Rule of Civil Procedure 56, and is designed to allow courts to decide whether enough evidence exists to go to trial, thus giving judges an opportunity to weed out meritless litigation.
Moreover, once a party seeking a summary judgment properly supports the motion and carries his burden of proof, the new law requires the non-moving party who opposes the motion for summary judgment to submit evidence showing the existence of specific facts establishing a genuine issue of material fact, effectively shifting the burden of proof to the non-moving party as does the federal rule. This creates a problem because La. C.C.P. art. 966(G) declares that "notwithstanding any other provision of this Article to the contrary, the burden of proof shall remain with the mover." The effect of the amendment, however, is that the non-moving party is no longer allowed to rely on the allegations of its pleadings in opposition to a properly-supported motion for summary judgment. In the instant case, Oakley claims that the trial court improperly granted NSRC's motion for summary judgment because NSRC failed to carry its burden of proof by presenting competent evidence to resolve genuine issues of material fact.

NSRC's responsibility
NSRC's motion for summary judgment is based on its claim that it has no responsibility for providing traffic controls at the intersection of Dauphine and Press streets because it had no legal duty to install or maintain traffic-control devices at the intersection where the accident occurred. In support of its motion, NSRC presented the affidavit of David A. Cleland, track supervisor of the Alabama Great Southern Railroad Co. (AGS), NSRC's wholly-owned subsidiary. Cleland swore that neither NSRC nor AGS owned or had custody or control over the subject intersection on the date of the accident in question.
However, Oakley contests NSRC's use of Cleland's affidavit, saying it is not competent evidence because it contains conclusory facts. In opposition to the motion for summary judgment and in an attempt to establish the existence of a genuine issue of material fact, Oakley filed the affidavit of Betty Jo Everett, Director of the Streets Department of the *491 City of New Orleans. In her affidavit, Ms. Everett testified that to the best of her knowledge, information and belief, the area where the accident occurred "is being utilized as a public roadway and is owned by the Alabama Great Southern Railroad Company." Because NSRC, through its wholly-owned subsidiary AGS owned the land in question, Oakley argues, NSRC had responsibility for providing traffic-control devices.
What Oakley fails to understand is that the competence of Cleland's affidavit is immaterial to the motion for summary judgment in question. Oakley urges this court to reverse the summary judgment on the basis of an alleged "genuine issue of material fact" which he claims Cleland's affidavit is incompetent to solve. However, a review of the law on the issue indicates that neither NSRC's ownership nor its custody and control of the intersection is a material factual issue for determining NSRC's duty to provide traffic-control devices at the intersection in question. Thus, no genuine issues of material fact exist precluding summary judgment, as demonstrated by the following discussion of the applicable law.
La. C.C. art 457 defines a "public road" as "one subject to public use," regardless of whether the public owns the land on which the road is built or merely has the right to use it. Ms. Everett's affidavit, submitted by Oakley, admits that the area in question is a "public roadway." Thus, even under the facts as presented by Oakley, both Dauphine and Press streets are public roads; the subject intersection is therefore public.
The responsibility for placing and maintaining traffic-control devices on public roads is controlled by the Highway Regulatory Act, LSA-R.S. 32:1 et seq. For purposes of that act, "highway" is defined as follows: "the entire width between the boundary lines of every way or place of whatever nature publicly maintained and open to the use of the public for the purpose of vehicular travel." Thus, the intersection in question here is a "highway" for purposes of the Highway Regulatory Act.
As part and parcel of the Highway Regulatory Act, the Uniform Highway Marking System is controlled by LSA-R.S. 32:235, which provides, in pertinent part, as follows:
B. Local municipal and parish authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this Chapter, regulations of the department and commissioner adopted pursuant hereto, and local traffic ordinances adopted pursuant to the authority granted by R.S. 32:41 and R.S. 32:42.
The above provision thus assigns responsibility for providing traffic-control devices on highways within local municipal and parish jurisdictions to the respective local municipal and parish authorities.
Moreover, relative to the rights and responsibilities for providing traffic-control devices assigned to private parties, LSA-R.S. 32:236 provides as follows:
A. No person, contractor, or public service corporation shall erect or maintain any sign of any nature or a traffic control device or any thing resembling a traffic control device within the right-of-way of any highway or street, without having official permission to install or maintain same in the public right-of-way under the provisions of R.S. 48:344 and R.S. 48:381, except the governing authority maintaining the highway or street.
Because NSRC is a private party, it is actually prohibited from erecting traffic-control signs under the above statute.
The provisions of the New Orleans City Code mirror the above state statutes. In Article IV, relative to traffic-control devices, the Code provides, in pertinent part, as follows:
§ 154-231. Authority to install.
The city traffic engineer shall place and maintain traffic control signs, signals and devices when and as required under the traffic laws of the city to make effective the provisions of such laws, and may place and maintain such additional traffic control devices as he may deem necessary to regulate traffic under the traffic laws of the *492 city or under state law, or to guide or warn traffic.
§ 154-233. Placement, maintenance of devices; specifications
The city shall place and maintain such traffic control devices upon highways under its jurisdiction as deemed necessary to indicate and to carry out the provisions of this chapter, and traffic ordinances adopted pursuant to the authority granted by R.S. 32:41 and R.S. 32:42. All such traffic control devices erected shall conform to the state department of transportation and development's manual or specifications.
§ 154-242. Display of unauthorized signs, signals, or markings
(a) No person shall place, maintain or display upon or in view of any highway any unauthorized sign, marking or device which:
(1) Purports to be or is an imitation of or resembles an official traffic control device or railroad sign or signal;
(2) Attempt to direct or restrict the movement or parking of vehicles:
. . . . .
(d) Every prohibited sign, signal, or marking is hereby declared to be a public nuisance and the superintendent of police may remove it or cause it to be removed without notice.
Thus, not only does NSRC not have the responsibility to provide traffic-control devices, it is actually prohibited from doing so by both state statute and municipal ordinance. Since NSRC has no responsibility for providing traffic-control devices at the subject intersection, NSRC is entitled to judgment as a matter of law.

Dismissal without prejudice
NSRC answered Oakley's appeal, challenging the trial court decision to the extent that it dismissed NSRC from the case without prejudice. Because we have determined that NSRC cannot be liable to Oakley for his injuries, NSRC is entitled to dismissal with prejudice. A trial court commits error by granting a dismissal without prejudice pursuant to the grant of a motion for summary judgment. Accordingly, we amend the trial court judgment to dismiss NSRC with prejudice.

Conclusion
The trial court judgment granting the motion for summary judgment in favor of NSRC and against Oakley is amended to dismiss NSRC with prejudice. In all other respects, the judgment is affirmed.
AFFIRMED AS AMENDED.