691 So.2d 1311 (1997)
Mary J. MILANO
v.
BOARD OF COMMISSIONERS OF ORLEANS LEVEE DISTRICT, d/b/a Orleans Levee Board, Hartford Insurance Company, Inc., Nicholas N. Caridas, d/b/a Walnut Room, and First Prudential Insurance Company, Inc.
No. 96-CA-1368.
Court of Appeal of Louisiana, Fourth Circuit.
March 26, 1997.
*1312 Howard Daigle, Jr., Michael D. Fisse, Covington, for Defendant/Appellee.
William W. Shaw, Jr., Blue Williams, L.L.P., Metairie, for Defendant/Appellant.
Before BYRNES, ARMSTRONG and PLOTKIN, JJ.
ARMSTRONG, Judge.
This is an appeal of a summary judgment finding that the defendant/cross-defendant, First Financial Insurance Company ("First Financial"), owed a defense and coverage to defendant/cross-appellant, the Board of Commissioners of Orleans Levee District, d/b/a Orleans Levee Board ("the Levee Board") relating to a personal injury claim. We affirm.[1]
*1313 The original plaintiff, Mary J. Milano, on August 19, 1994, slipped and fell on a ramp and stairway of the Administration Building of the New Orleans Lakefront Airport, after leaving the Walnut Room restaurant located in that building. Ms. Milano is not a party to this appeal. Ms. Milano sued the Levee Board, which operates the airport, and Nicholas Caridas, d/b/a the Walnut Room.[2] Caridas leases space in the Administration Building of the New Orleans Lakefront Airport, which is owned and operated by the Levee Board, and operates a coffee shop and restaurant, the Walnut Room. Caridas had general commercial liability insurance issued by First Financial (incorrectly named in the original suit as First Prudential Insurance Company). The Levee Board was named as an additional insured in the policy. The Levee Board has its own insurance coverage under a policy provided by Associated Aviation Underwriters, Inc.
The Levee Board tendered a claim to First Financial which contended that no coverage existed because she was not injured in the course of the "operations" of the Walnut Room. The Levee Board filed a motion for summary judgment seeking a declaration that the First Financial had a duty to defend. The trial court found that Ms. Milano's allegations "do allege liability arising out of restaurant operations" and that the First Financial policy provided coverage to the Levee Board as an additional insured. First Financial now appeals.
First Financial makes two arguments. First, it claims the trial court erred in finding a duty to defend because the policy provides no coverage for accidents not arising on the leased premises and not arising out of the lessee's business. In Oakley v. Thebault, 96-0937 (La.App. 4th Cir. 11/13/96), 684 So.2d 488, this court set out the standard for reviewing a motion for summary judgment:
The standard for reviewing a motion for summary judgment was recently state by this court in Daniel v. Blaine Kern Artists, Inc., 96-1348 (La.App. 4th Cir. 9/11/96) 681 So.2d 19, as follows:
Appellate courts review summary judgments de novo. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. In determining whether an issue is "genuine," courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Procedurally, the court's first task on a motion for summary judgment is determining whether the moving party's supporting documentspleadings, deposition, answers to interrogatories, admissions and affidavitsare sufficient to resolve all material factual issues. LSA-C.C.P. art. 966(B).
681 So.2d at 20.
If the court finds that a genuine issue of material fact exists, summary judgment must be rejected. Walker v. Kroop, 96-0618 (La.App. 4th Cir. 7/24/96), 678 So.2d 580, 584. Thus, the burden does not shift to the party opposing the summary judgment until the moving party first presents a prima facie case that no genuine issues of material fact exist. Id. At that point, the party opposing the motion must "make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial." La. C.C.P. art. 966(C).
This court has previously gone on record to say that the 1996 amendments to La. C.C.P. art. 966(C) do not change the existing law concerning genuine issues of material fact and burdens of proof applied to a summary judgment proceeding. See Daniel, 681 So.2d at 20-21; Walker, 678 So.2d at 583-84; Short v. Giffin, 96-0361, slip op. at 2 (La.App. 4th Cir. 8/21/96), 682 So.2d 249, 251. However, the amendment did make a change in the law to the extent that it now proclaims that summary judgments are "favored" and thus the rules *1314 should be liberally applied, which requires courts to change their attitudes when reviewing motions for summary judgment from the attitudes required under the preamendment jurisprudence which proclaimed just the oppositethat summary judgment were not favored and thus should be strictly construed. The language of the amendment tracks the language of Federal Rule of Civil Procedure 56, and is designed to allow courts to decide whether enough evidence exists to go to trial, thus giving judges an opportunity to weed out meritless litigation.
684 So.2d at 489-490.
Once the moving party properly supports the motion and meets her burden of proof, an adverse party may not rest on the mere allegations, or, as in the instant case, the denials, of its pleadings, to defeat the motion for summary judgment. La. C.C.P. art. 967; Moore v. Delta Waste System, Inc., 96-1984 (La.App. 4th Cir. 3/12/97), 690 So.2d 1108; Oakley, supra. Rather, the burden shifts and the party opposing the motion must "make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial." La. C.C.P. art. 966(C); Moore, supra.
In Bryant v. Motwani, 96-1351 (La.App. 4th Cir. 10/30/96), 683 So.2d 880, this court addressed the jurisprudence relating to the duty to defend, stating:
An insurer's duty to defend is broader than its liability for an adverse judgment. The insurer's duty to defend is determined by comparing the allegations of the plaintiff's complaint with the terms of the policy; the insurer generally has a duty to defend unless the allegations in the complaint unambiguously exclude coverage. American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253, 259 (1969). The duty to defend is determined solely from the plaintiff's pleadings and the face of the policy, without consideration of extraneous evidence. See Collier v. Williams-McWilliams Co., Inc., 459 So.2d 719, 724 (La.App. 4th Cir.1984). The plaintiff's complaint against the insured is examined with the assumption that all the allegations are true. West Brothers of DeRidder v. Morgan Roofing, 376 So.2d 345, 348 (La.App. 3d Cir.1979). Where the pleadings, taken as true, allege both coverage under the policy and liability of the insured, the insurer is obligated to defend, regardless of the outcome of the suit or the eventual determination of actual coverage. American Home at 259, 230 So.2d 253.
683 So.2d at 884.
Reading Oakley, supra, and Moore, supra, on summary judgments, together with Bryant v. Motwani, supra, on the limitations of proof in duty to defend issues, it is apparent that once a moving party meets its burden of proving there is no genuine issue of material fact and that the pleadings and the face of the insurance policy establish a duty to defend, as a practical matter, an opposing party cannot defend against the inevitable summary judgment. This is because, while a party may not rest on the allegations or denials in its pleadings to rebut a properly supported motion for summary judgment, and must come forth with evidence showing the existence of specific facts establishing a genuine issue of material fact, "[t]he duty to defend is determined solely from the plaintiff's pleadings and the face of the policy, without consideration of extraneous evidence." Thus, the party may not present any evidence such as affidavits, depositions, etc. Bryant v. Motwani. The party opposing a properly supported motion for summary judgment in a duty to defend case is caught in a type of "Catch-22" situation.
An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts. Smith v. Matthews, 611 So.2d 1377 (La.1993). The intent of the parties, as reflected by the words of the policy, determines the extent of coverage. La. C.C. art. 2045; Louisiana Ins. Guar. Ass'n. v. Interstate Fire & Casualty Co., 93-0911 (La.1/14/94), 630 So.2d 759. An insurance policy should not be interpreted in an unreasonable or restrained manner so as to enlarge or restrict its provisions beyond what is contemplated by its terms or so as to result in an absurd interpretation. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), *1315 634 So.2d 1180. Unless the words and phrases in a policy have acquired a technical meaning, they must be construed using their plain, ordinary and generally accepted meaning. Interstate, 630 So.2d at 763. If the language of the policy is clear, unambiguous, and expressive of the intent of the parties, the policy must be enforced as written. Central La. Elec. Co. v. Westinghouse Elec. Corp., 579 So.2d 981 (La.1991). However, if there is an ambiguity, the ambiguous provision must be construed against the insurer and in favor of the insured. Reynolds, supra.
In Ms. Milano's original petition, she alleged that she was "departing the Walnut Room at the New Orleans Lakefront Airport on the stairs of the Walnut Room when she fell because of the defective stairs and hand railing." She named the Levee Board as the owner and lessor of the building and particular set of stairs, and Caridas as the lessee and operator of the "Walnut Room, premise and its defective stairwell." She named the Levee Board as a defendant, along with Caridas d/b/a the Walnut Room. First Financial (she erroneously named the insurer as First Prudential and later amended to correctly name First Financial) was named as the liability insurer of both Caridas d/b/a Walnut Room and the Levee Board.
The First Financial insurance policy is a broad commercial general liability policy providing coverage for bodily injury and property damage. The declarations page of the coverage part of the policy describes the business covered as a restaurant and meeting room located at "New Orleans Airport, Orleans Levee Board Administration Bldg." The named insured is "Nicholas Caridas DBA Walnut Room." A premium was paid naming an additional insured, "Orleans Levee Board, Lakefront." The policy provides that First Financial:
[W]ill pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply....
The policy thus imposes upon First Financial a duty to defend the Levee Board against any suit seeking damages for bodily injury or property damage to which the insurance "applies." The insurance "applies," as stated on the additional insured endorsement, to "liability arising out of [the Walnut Room's] operations or premises owned by or rented to [the Walnut Room]."
On the face of Ms. Milano's petition, she was injured as she departed the Walnut Room, while "on the stairs of the Walnut Room." Under the plain terms of the policy, the action of a patron departing the Walnut Room, "on the stairs of the Walnut Room," arises out of the operation of the restaurant. Therefore, the insurance "applies" as contemplated by the policy, and the parties intended that in such a case First Financial would have a duty to defend insureds against suits seeking damages for bodily injury sustained as a result of such an occurrence. Accepting the allegations of Ms. Milano's petition as true, and applying the terms of the policy, First Financial has a duty to defend the Levee Board.
First Financial next argues that the Levee Board's own policy of insurance issued by Associated Aviation Underwriters is primary and should bear the duty to defend the Levee Board from the suit. The First Financial policy provides that its insurance is excess and not primary when there is other insurance for limited circumstancesfor fire coverage for "your work," fire insurance for the premises, or for losses arising out of the maintenance or use of aircraft, autos or watercraft. First Financial admits that none of these conditions apply in the instant case to make its insurance excess. However, it essentially makes an equity argument as follows: that the Levee Board supervises and maintains the stairs in question where the accident occurred, the Walnut Room has no control over these stairs and they are not part of the leased premises and, therefore, that the Levee Board and its principal insurer Associated Aviation Underwriters should *1316 bear the responsibility and defense of the suit. Alternatively, First Financial argues for a pro rata sharing of the costs of defending the suit, again, on equity grounds.
First Financial cites State Farm Fire and Casualty Co. v. Hartford Insurance Co., 25419 (La.App.2d Cir. 1/19/94), 631 So.2d 30, writ denied, 94-0416 (La.4/4/94), 635 So.2d 1108, wherein the appellate court held that it was sound public policy to place the primary liability for an accident upon the party who was in the best position to have avoided the incident. In Hartford, a physician took two guests duck hunting with him on property owned by a partnership of which the physician was a member. Due to the physician's negligent (his negligence was stipulated) handling of his shotgun, it discharged and struck one of his guests. The physician had a personal liability policy and an umbrella from State Farm. The hunting partnership had a policy providing for liability coverage from Hartford.
In determining the duty to defend issue, we look at the allegations of the petition and the policy. Hartford was decided on its peculiar facts. Hartford did not involve the issue of whether a duty to defend was owed by the physician's insurer; judgment had been rendered by the trial court in favor of the physician's insurer in its claim for indemnification after settling the suit. Hartford was fact specific based on the peculiar facts and circumstances of that case. Also, in the instant case, as previously discussed, First Financial's policy is a broad general commercial liability policy specifically providing the Levee Board coverage for suits for damages arising out of the operations of the Walnut Room, while the Associated Aviation Underwriters policy is a limited policy covering airport operations. We do not find Hartford persuasive.
Ms. Milano met her burden of proving a prima facie case that there was no genuine issue of material fact and she was entitled to summary judgment as a matter of law on the duty to defend issue. First Financial failed to bring forth specific facts showing there was a genuine issue of material fact. Accordingly, summary judgment was proper.
For the foregoing reasons, we affirm the judgment of the trial court and remand this case for further proceedings.
AFFIRMED.
NOTES
[1] In the recent case of City of Plaquemine v. N. American Constructors, 96-1825 (La.11/8/96), 682 So.2d 1253, the Louisiana Supreme Court held that a partial summary judgment ordering an insurer to defend an action was a non-appealable interlocutory judgment. That overruled jurisprudence from this court, including Milano v. Bd. of Commissioners of Orleans Levee Dist., 96-1168 (La.App. 4th Cir. 6/12/96), 676 So.2d 195, where another panel of this court held that the partial summary judgment in the above referenced case, ordering First Financial to defend the suit against the Levee Board, was an appealable judgment, not a non-appealable interlocutory judgment. That ruling was correct at that time according to jurisprudence in this circuit and at least one other circuit. See Lawson v. Straus, 95-1017, 95-1028 (La.App. 4th Cir. 8/23/95), 660 So.2d 892, writs denied, 95-2271, 95-2325 (La.12/8/95), 664 So.2d 422, 423; Dennis v. Finish Line, Inc., 93-0638, 93-0639, (La. App. 1st Cir. 3/11/94), 636 So.2d 944, writ denied, 94-1652 (La.10/7/94), 644 So.2d 636.
[2] Mary Milano died after instituting this action. Her sole surviving daughter has been substituted as plaintiff.