It Judge TERRI F. LOVE.
Sadie Guey appeals the trial court’s granting of summary judgment in favor of the defendant. The trial court found that Deputy David Illg’s dissemination of information, regarding an ongoing undercover narcotics investigation contained on an audiotape, did not violate the provisions of the Louisiana Electronic Surveillance Act, La. R.S. 15:1301 et seq. We affirm the trial court’s judgment for the following reasons:

FACTS AND PROCEDURAL HISTORY

The defendant, Deputy David Illg (“Deputy Illg”), was employed as a deputy sheriff by Sheriff I.F.“Jiff’ Hingle (“Sheriff Hingle”) in Plaquemines Parish in 1995 and 1996. Deputy Illg was working on an undercover narcotics investigation. The investigation centered on Duke Bergman (“Bergman”). It was alleged that Bergman was involved in dealing narcotics out of the Black Velvet Lounge, which was owned by Milton Marinovich (“Marino-vich”). Marinovich was a Plaquemines Parish Sheriffs Captain and good friend of Bergman. Deputy Illg received a package from an anonymous sender, which contained an audiotape. After throwing the packaging away, Deputy Illg listened to the contents of the audiotape. The audiotape contained a conversation between Sadie Guey (“Guey”), a private investigator for the Plaquemines Parish District Attorney’s Office, and Marinovich. During the conversation with Marinovich, Guey divulged sensitive information obtained from a confidential informant pertaining to the ongoing narcotics investigation of Bergman. Shortly thereafter, Deputy Illg approached | ¡.PEA Agent Jeff Justice (“Agent Justice”) with the tape. Agent Justice advised him to take the tape to Judge William A. Roe of the Twenty-Fifth Judicial District Court. Judge Roe instructed him to forward the tape to the Plaquemines Parish District Attorney’s Office.
In 1997, Sadie Guey filed a lawsuit against Deputy Illg and Sheriff Hingle alleging Deputy Illg: (1) violated La. R.S. 15:1301 et seq. of the Louisiana Electronic Surveillance Act (“Act”) when he improperly obtained an audiotape of a private *661 conversation between Guey and Marino-vich without either’s consent; (2) violated La. R.S. 15:1301 when he disseminated the contents of the audiotape without the consent of either Guey or Marinovich; (3) committed an invasion of privacy; and (4) committed other acts of negligence. Deputy Illg subsequently filed a Motion for Summary Judgment. The trial court held the following:
THE COURTS [sic] FINDS that Deputy David Illg was within the course and scope of his duties as a commissioned Deputy Sheriff for the Plaquemines Sheriffs Office at the time of the actions as alleged by the plaintiffs, for all purposes in the above captioned matter;
The trial court granted the motion as to the claim of improper dissemination, and denied the motion as to the claim of invasion of privacy. A hearing on the interception claim was deferred until a later date in order to allow the plaintiffs an opportunity to supply “further evidence” to the court. The plaintiffs failed to provide evidence to support this claim. As a result, the trial court ruled at a subsequent hearing:
The Court, considering the motions, argument of counsel, stipulations of the parties, and for the reasons this day orally assigned, renders the following judgment:
IT IS ORDERED ADJUDGED AND DECREED that the Defendants’ Motion for Summary Judgment in regards to the claims of 1 ^interception and/or obtaining in violation of La. R.S. 15:1301, et. seq. is hereby granted;
A Motion for New Trial was filed by the plaintiffs and was denied by the trial court. Guey now appeals the trial court’s granting of the defendants’ Motion for Summary Judgment and the denial of her Motion for New Trial.

LAW AND DISCUSSION

Appellate courts review a summary judgment de novo, using the same criteria applied by the trial courts to determine whether the summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257, (La.2/29/00), 755 So.2d 226, 230. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of 4 actions. Two Feathers Enterprises v. First National Bank, 98-0465 (La.App. 4 Cir. 10/14/98), 720 So.2d 398, 400. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). However, if the movant will not bear the burden of proof at trial on the matter that is before the court, the movant’s burden does not require him to negate all essential elements of the adverse party’s claim. La. C.C.P. 966(C)(2). Rather, he need only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim. La. C.C.P. 966(C)(2).
Pursuant to La.C.C.P. art. 966, the initial burden of proof remains on the mover to show that no genuine issue of material fact exists. After the mover has met its initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. Oakley v. Thebault, 96-0937 (La.App. 4 Cir. 11/13/96), 684 So.2d 488. If the non-moving party fails to meet this burden, there is no genuine issue of |4material fact, and the mover is entitled to summary judgment. Schwarz v. Administrators of Tulane Educational Fund, 97-0222 (La.App. 4 Cir. 9/10/97), 699 So.2d 895. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, *662 show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.

INTERCEPTION OF ORAL COMMUNICATION

This Court notes the language in the Act is modeled after its federal counterpart. Federal law, although not controlling, provides instructive guidance in the interpretation of the provisions under the Act. Guey and Deputy Illg rely heavily on federal jurisprudence in support of their respective positions in this case. However, we will review this situation as a case of first impression as it relates to Louisiana law.
The Louisiana Electronic Surveillance Act, La. R.S. 15:1801 et seq., is divided into three sections. The first section, La. R.S. 15:1303 prescribes specific remedies, which consists of fines and imprisonment. The second section, La. R.S. 15:1307, does not permit the publication or use of the information contained in the communication. Lastly, La. R.S. 15:1312 provides a civil cause of action against the person who intercepts, discloses, or uses the information.
Specifically, Guey argues that the trial court erred in denying her claim of Deputy Illg’s interception of an oral communication in violation of La. R.S. 15:1303(A) of the Act. The statute provides, in pertinent part:
(1) Except as otherwise specifically provided in this Chapter, it shall be unlawful for any person to: Willfully intercept, endeavor to |,^intercept, or procure any other person to intercept or endeavor to intercept, any wire or oral communication;
(2)Willfully use, endeavor to use, or procure any other person use or endeavor to use, any electronic, mechanical, or other device to intercept any oral communication ...
(3) Willfully disclose, or endeavor to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection; or
(4) Willfully use, or endeavor to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this Subsection.
Guey directs this court’s attention to inconsistencies in the deposition transcript regarding how Deputy Illg came into possession of the tape. Guey testified that Deputy Illg told her that a ham operator from Port Sulphur sent the tape to him. Additionally, she stated Sheriff Hingle told her that a confidential informant gave the tape to Deputy Illg. To the contrary, Deputy Illg stated in his deposition that he did not know where the tape came from and he did not recall telling anyone differently. There is no evidence contained in the record that proves Deputy Illg was the interceptor of the communication between Guey and Marinovich.
Additionally, the appellant alleges a conspiracy pertaining to her knowledge of Deputy Illg’s prior alleged “improper actions, which he had taken as a PPSO deputy”. This allegation in conjunction with the mysterious circumstances under which Deputy Illg came into possession of the tape and his alleged personal | (¡relationships with DEA agents, the Plaquemines District Attorney Office, and the trial judge are part of the alleged conspiracy. However, the appellant did *663 not present any evidence to substantiate these allegations.
In response to Guey’s contentions, Deputy Illg argues that Guey failed to prove that he intercepted the communication and the interception was willful in violation of the Act.
The facts in the instant case involve Deputy Illg’s lawful receipt of a communication intercepted by a third party and his subsequent limited disclosure of the information to other law enforcement officials. It is apparent from the record that the tape contained a wire or oral communication. However, no evidence was presented at trial to show that Deputy Illg, or a person whom he solicited, participated in the interception of the wire or oral communication or through the use of a device. In fact, Guey was granted an extension of time to provide the trial court with evidence, which would pinpoint exactly who and how the conversation was intercepted. Despite being given an extension of time to provide this information to the trial court, Guey failed to proride the evidence. This court also notes Guey did not contend that Deputy Illg intercepted the conversation between Guey and Marinorich. Additionally, Deputy Illg stated in his deposition that the tape was sent anonymously to his business address and he did not participate in the interception of the conversation. Consequently, the trial court dismissed the claim regarding interception.
Based on Guey’s failure to carry her evidentiary burden of proof, we do not find the trial court erred in finding no material issue of fact.

DISSEMINATION OF INFORMATION CONTAINED IN INTERCEPTED ORAL COMMUNICATION

17Guey contends Deputy Illg disseminated the information contained in the recorded conversation between Guey and Mari-norich in a manner inconsistent with the performance of his duties as a sheriffs deputy in violation of La. R.S. 15:1309(A), which creates a civil cause of action under La. R.S. 15:1312(A).
La. R.S. 15:1309 states:
A. Any investigative or law enforcement officer who, by any means authorized by this Chapter, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure, and provided that such disclosure of the contents of any wire or oral communication, or evidence derived therefrom, relates directly to the offense for which the order was granted.
B. Any investigative or law enforcement officer who, by any means authorized by this Chapter, has obtained knowledge of the contents of any wire or oral communication or evidence derived there from may use such contents to the extent such use is appropriate to the proper performance of his official duties.
Guey argues that the contents of the tape involved an expression of opinions between co-employees and this is the type of speech the Act was intended to protect. Furthermore, Guey asserts the tape did not contain information regarding matters of public concern. Essentially, she contends that no legitimate public interest was served in the dissemination of the contents of the tape to the DEA, Plaque-mines Parish District Attorney’s Office, and other sheriffs deputies.
Conversely, the conversation between Guey and Marinorich pertained to a criminal matter, which was the subject of an ongoing investigation at the time of the *664 recording. The record reflects that, upon receipt of the recording, Deputy Illg submitted the tape to a limited number of law enforcement personnel in the | ^performance of his duties as a law enforcement officer. He did not disclose the informátion to the public.
Furthermore, Guey asserts the La. R.S. 15:1301 et seq. language “by any means authorized by the chapter” restricts the dissemination and use of the contents of the tape to only information obtained through a judicially obtained wiretap.
La. R.S. 15:1302 defines a law enforcement officer as:
“Investigative or law enforcement officer” means any commissioned state police officer of the Department of Public Safety and Corrections who, in the normal course of his law enforcement duties, is investigating an offense enumerated in this Chapter, and the district attorney authorized by law to prosecute or participate in the prosecution of such offense.
We must decide whether Deputy Illg’s dissemination of information contained in a communication in furtherance of a police investigation, which is intercepted by a third party without a judicially authorized wiretap, violates the provisions of the Act.
In the instant case, Deputy Illg testified in his deposition that he received the tape anonymously via ordinary mail addressed to him in his official capacity as a sheriffs deputy at his business address. We find that Deputy Illg is a law enforcement officer within the meaning of La. R.S. 15:1302. Deputy Illg testified he did not know who sent the tape. Moreover, Deputy Illg stated he had no knowledge of whether each of the parties consented to being taped. Deputy Illg also stated that he was unaware of the provisions of the Act. Deputy Illg disclosed the information to other law enforcement agents in furtherance of his investigation into contents of the tape. Deputy Illg did not follow the chain of command by alerting his immediate superior of the existence of the tape. Even so, Deputy Illg |fldisseminated the information contained in the taped conversation between Guey and Marinovich to other law enforcement agents. To this end, the record supports Deputy Illg’s dissemination of the contents of the tape in furtherance of an internal investigation to aid in his performance as a law enforcement officer. There is no indication or evidence, which supports that he publicly disclosed the information or used the contents of the taped conversation for illegal purposes.
Furthermore, Guey argues that Deputy Illg’s dissemination of the information contained in the taped conversation subjects Deputy Illg to a civil cause of action in accordance with La. R.S. 15:1312(A). La. R.S. 15:1312(A) provides:
A. Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this Chapter shall have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and be entitled to recover from any such person:
(1) Actual damages, but not less than liquidated damages computed at the rate of one hundred dollars a day for each day of violation or one thousand dollars, whichever is greater.
(2) A reasonable attorney’s fee and other litigation costs reasonably incurred.
(3) Punitive damages
B. A good faith reliance on a court order shall constitute a complete defense to any civil or criminal action brought under this Chapter.
*665 Both Deputy Illg and Guey cite Keller v. Aymond, 98-843 (La.App. 3 Cir. 12/23/98), 722 So.2d 1224, as guidance in the instant case. Since we are not concerned with the application of federal law to this particular case, we will only |inapply those sections of Keller, which are applicable to the resolution of issues arising under the Louisiana Act.
The court in Keller pointed out that the Act allows limited non-public disclosure to persons in the performance of their official duties. The court also made an important distinction between disclosure to a limited audience of ‘professionally interested strangers’ in the context of their official duties is not the equivalent to disclosure to the public ...” Id. at 1228. Therefore, this Court will focus on the manner in which Deputy Illg used the information.
We do not find that Deputy Illg acted without any regard for the lawfulness of his actions. Although Deputy Illg did not follow the department’s chain of command when disseminating the information contained in the tapes, his actions certainly cannot be deemed criminal and publicly broadcast in violation of the Act. Clearly, Deputy Illg, in his capacity as a law enforcement officer, fulfilled his legal duty to further investigate the contents of the taped conversation regarding criminal activity. As such, Deputy Illg should be afforded the protection provided under the Act to law enforcement officers. Therefore, we conclude that the trial court did not err in finding Deputy Illg not liable for civil damages under La. R.S. 15:1312.
Accordingly, the court’s judgment stated “... Deputy David Illg was within the course and scope of his duties as a commissioned Deputy Sheriff for the Plaque-mines Sheriffs Office at the time of the actions as alleged by the plaintiffs, for all purposes in the above captioned matter.” Therefore, we conclude the trial court correctly granted the defendants’ Motion for Summary Judgment on the issues of interception, dissemination and civil damages as to plaintiffs claims arising under La. R.S. 15:1301 et seq.
AFFIRMED.