| ROLAND L. BELSOME, Judge.
This appeal arises out of a medical malpractice claim. The trial court granted a Motion for Summary Judgment in favor of the defendant, dismissing the plaintiffs action with prejudice. For the reasons assigned, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
On December 23, 1997, plaintiff/appellant, Sheldon Fleming (“Fleming”), filed a medical malpractice complaint against defendant/appellee, University Healthcare System, L.C., d/b/a DePaul/Tulane Behavioral Health Center, f/k/a Louisiana Psychiatric Company, Inc., d/b/a Columbia DePaul Hospital (“DePaul”), for alleged medical malpractice stemming from Fleming’s hospitalization from December 4, 1996 thorough December 20,1996. Specifically, Fleming’s action maintained that he was held against his will at DePaul for sixteen (16) days.
On August 29, 2001, the Medical Review Panel convened and determined that the evidence did not support the conclusion that DePaul failed to meet the applicable standard of care as charged. The panel further found that DePaul’s conduct was not a factor in causing any injuries and related damages allegedly sustained by Fleming. The panel made the following findings:
121) The evidence showed adequate reasons for Fleming’s hospitalization;
2) Fleming had a history of mental illness;
3) Fleming was refusing to take his required medications; and
4) Both the physician’s emergency certificate and the coroner’s emergency . certificate describe sufficient reasons for an involuntary admission.
Fleming filed a Petition for Medical Malpractice on December 3, 2001. On February 4, 2002, DePaul filed a Motion for Summary Judgment, arguing that based on the record and on the affidavits submitted, no genuine issues of material fact existed. On May 12, 2003, the trial court granted DePaul’s Motion for Summary Judgment, dismissing Fleming’s action with prejudice. Fleming has filed this timely appeal in proper person.
ARGUMENT
There are no specific assignments of error presented in this appeal. Fleming argues, however, that he was brought to DePaul Hospital due to an illegal Request and Order for Protective Custody. Particularly, Fleming asserts that the two people responsible for the order being issued were his ex-wife and her companion. As to the allegations against DePaul, Fleming submits that: 1) DePaul took advantage of an opportunity to collect on his medicare insurance; 2) DePaul lied to him; 3) De-Paul did not post patient rights; and 4) the illegal detainment interrupted his life, and he was damaged thereby.
*693 In opposition to this appeal, DePaul maintains that the evidence submitted to the trial court in support of the Motion for Summary Judgment clearly indicates that there was no deviation from the applicable standards of care, treatment and hospitalization rendered to Fleming. Specifically, DePaul contends that Fleming 13was properly admitted to the hospital by virtue of an Order for Protective Custody; he was then evaluated by two physicians, after which the appropriate Physician’s Emergency Certificate and Coroner’s Emergency Certificate were issued authorizing his admission for treatment; and, following a successful course of care and treatment, he was discharged within fifteen (15) days of admission by Emergency Certificate, as required by law.
In support of the Motion for Summary Judgment, DePaul submitted the following to the trial court:
1) Affidavit of Dudley M. Smith, Jr., M.D., psychiatrist on the medical review panel;
2) Medical Review Panel Opinion;
3) Affidavit of William J. Paradine, R.N., employed by DePaul. Attached to the affidavit are copies of all Patient Rights documents provided to Fleming;
4) Affidavit of Carolyn Wiley, L.C.S.W., employed by DePaul. Attached to the affidavit is a copy of the Patient Rights information posted at DePaul;
5) Affidavit of Gwen Doherty, R.H.I.A., employed by DePaul. Attached to the affidavit is the following:
a. Request and Order for Protective Custody;
b. Physician’s Emergency Certificate prepared by the examining psychiatrist, C.R. Freed, M.D.;
c. Flemings’ medical records while at DePaul.
LAW AND DISCUSSION
Appellate courts review a summary judgment de novo, using the same criteria applied by the trial courts to determine whether the summary judgment is ^appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257, (La.2/29/00), 755 So.2d 226, 230. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. Two Feathers Enterprises v. First National Bank, 98-0465 (La.App. 4 Cir. 10/14/98), 720 So.2d 398, 400. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2).
Pursuant to La. C.C.P. art. 966, the initial burden of proof remains on the mover to show that no genuine issue of material fact exists. After the mover has met its initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. Oakley v. Thebault, 96-0937 (La. App. 4 Cir. 11/13/96), 684 So.2d 488. If the non-moving party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. Schwarz v. Administrators of Tulane Educational Fund, 97-0222 (La. App. 4 Cir. 9/10/97), 699 So.2d 895. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 967.
After a thorough review of the record, we find that DePaul’s Motion for Summary Judgment was well documented. We further find that Fleming failed to refute any *694 of the evidence submitted in support of the Motion for Summary Judgment.
DePaul adhered to all legal requirements concerning a patient presented to the hospital pursuant to a Order for Protective Custody. Specifically, La. R.S. 28:51 required DePaul to receive Fleming. The statute states in pertinent part:
LA. The director of a treatment facility, subject to the availability of suitable accommodations, shall receive for observation, diagnosis, care, and treatment, any person whose admission is authorized under any of the procedures provided for in R.S. 28:52 through R.S. 28:54 [which includes R:S. 28:53.2- — an Order for Protective Custody] and R.S. 28:64. (Emphasis Supplied).
Within twelve hours of his admission, Fleming was examined by Psychiatrist, C.R. Freed, M.D. In connection with that examination, Dr. Freed prepared a Physician’s Emergency Certificate, wherein he indicated that Fleming was dangerous to himself and others, gravely disabled, and in need of immediate psychiatric treatment. La. R.S. 28:53, regarding admission by Emergency Certificate, provides in pertinent part, as follows:
A(l) A mentally ill person or a person suffering from substance abuse may be admitted and detained at a treatment facility for observation, diagnosis, and treatment for a period not to exceed fifteen days under an emergency certificate.
B(l) Any physician or psychologist may execute an emergency certificate only after an actual examination of a person alleged to be mentally ill or suffering from substance abuse who is determined to be in need of immediate care and treatment in a treatment facility because the examining physician or psychologist determines the person to be dangerous to self or others or to be gravely disabled. Failure to conduct an examination prior to the execution of the certificate will be evidence of gross negligence. (3) ... The certificate shall be dated and executed under the penalty of perjury, but need not be notarized. The certificate shall be valid for seventy-two hours and shall be delivered to the director of the treatment facility where the person is to be further evaluated and treated.
F. An emergency certificate shall constitute legal authority to transport a patient to a treatment facility and shall permit the director of such treatment facility to detain the patient for diagnosis and treatment for a period not to exceed fifteen days ...
G(l) Upon admission of any person by emergency certificate to a treatment facility, the director of the treatment facility shall | ^immediately notify the coroner of the parish in which the treatment facility is located of the admission.... (2) Within seventy-two hours of admission, the person shall be independently examined by the coroner or his deputy who shall execute an emergency certificate, pursuant to Subsection B, which shall be a necessary precondition to the person’s continued confinement....
(5) If, from his examination, the coroner concludes that the person is not a proper subject for emergency admission, then the person shall not be further detained in the treatment facility and shall be discharged by the director forthwith.
I. Every patient admitted by emergency certificate shall be informed in writing at the time of his admission of the procedures of requesting release from the treatment facility, the availability of counsel, information about the mental health advocacy service, the rights enumerated in R.S. 28:171 and the rules and regulations applicable to or concerning *695 his conduct while a patient in the treatment facility... .In addition, a copy of the information mentioned in this Subsection must be posted in any area where patients are confined and treated.
From a review of the record, we find no evidence of any violation of Fleming’s patient rights. According to the affidavit of Gwen Doherty, Fleming was informed in writing of the procedures for requesting release from the facility, the availability of counsel, and information about the mental health advocacy service. Ms. Doherty also attested to the fact that Fleming refused to read and/or sign the written documentation. The affidavit of Mary Jo Day indicates that all of the patient rights information was posted on the floor where Fleming was confined and receiving treatment. Nurse, William J. Paradine, further stated, by affidavit, that he personally provided Fleming with written documentation enumerating his rights as set forth in La. R.S. 28:171. The fact that Fleming was provided with a written explanation of his rights was further corroborated by the affidavit of Carolyn Wiley, LCSW.
|7It must be noted that the only evidence presented by Fleming to support the contention that he was not informed of his patient rights is the affidavit of Norman Dixon, Jr. (“Dixon”), a former employee of DePaul. Dixon, who is also a personal acquaintance of Fleming, states that he was assigned to be with Fleming some of the time that Fleming was a patient at DePaul; and during that time, there were no patient rights posted in the unit where Fleming was a patient. Dixon does indicate, however, that he advised Fleming to contact an attorney to inquire about his release from DePaul. Fleming has presented no other relevant evidence in opposition to this summary judgment.
In a medical malpractice action, the plaintiff has the burden of proving:
1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... within the involved medical specialty; 2) that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill; and 3) that, as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care, the plaintiff suffered injuries that would not otherwise have been incurred. La. R.S. 9:2794(A). Pierre-Ancar v. Browne-McHardy Clinic, 00-2409 (La.App. 4 Cir. 1/16/02), 807 So.2d 344, 348.
There are certain medical malpractice cases, such as the amputation of the wrong limb or leaving a sponge in the patient’s body, in which expert testimony is not necessary to establish a breach in the standard of care by a physician. Pfiffner v. Correa, 94-0992 (La.10/17/94) 643 So.2d 1228. However, the instant case does not involve an act of obvious negligence. Fleming offered no expert testimony to establish the applicable standard of care, whether that standard of care was 1 «breached, and whether that breach resulted in any injuries to Fleming. Edwards v. Raines, 35,284 (La.App. 2 Cir. 10/31/01), 799 So.2d 1184, 1187. Accordingly, Fleming has failed to carry his requisite burden of proof.
After a de novo review of the record, we find that DePaul set forth ample evidence to satisfy their burden of proof for summary judgment. The documents presented in support of the motion clearly demonstrate that that there is no factual support for Fleming’s claim for medical malpractice. Moreover, we find that Fleming failed to produce any factual support sufficient to establish that he will be able to prove at trial the applicable standard of care, a breach thereof or causation. In *696 these circumstances, summary judgment in favor of DePaul is appropriate.
CONCLUSION
For the foregoing reasons, we affirm the trial court’s granting of the Motion for Summary Judgment in favor of DePaul.
AFFIRMED.