948 So.2d 1138 (2006)
Andrew F. MANASCO
v.
NATIONAL RAILROAD PASSENGER CORPORATION.
No. 2006-CA-0976.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 2006.
*1140 William J. Billeaud, Benjamin B. Saunders, Nicholas B. Castrogiovanni, Joseph M. Miller, Davis * Saunders, PLC, Mandeville, LA, For Plaintiff/Appellant.
Dow Michael Edwards, Timothy F. Daniels, David S. Kelly, Lemle & Kelleher, L.L.P., New Orleans, LA, for Defendant/Appellee.
Court composed of MAX N. TOBIAS, JR., DAVID S. GORBATY, and EDWIN A. LOMBARD, Judges.
DAVID S. GORBATY, Judge.
Andrew F. Manasco appeals a summary judgment granted in favor of defendant, National Railroad Passenger Corporation. For the following reasons, we reverse the judgment of the trial court and remand for further proceedings.
FACTS:
Mr. Manasco was employed by National Railroad Passenger Corporation (hereinafter "Amtrak") at the Union Passenger Terminal in New Orleans. According to Mr. Manasco, he first injured himself on the job on September 28, 2000, when he injured his lower back while unloading a mail car loaded with stacks of magazines. He claims that the hydraulic pallet jack he used to move the pallets was defective, and that his employer was aware that the pallet jack was defective, but did not repair or replace it. Because of the defective nature of the pallet jack, he was forced to shift the jack from side to side while pulling it backwards. As he was backing up, he slipped on a piece of paper on the floor behind him, fell and injured his back.[1]
Mr. Manasco filed suit on October 16, 2002, alleging only an injury to his left shoulder while at work on March 22, 2002. He amended his suit on April 17, 2003, adding a claim for the alleged injury to his lower back sustained on September 28, 2000.
On July 11, 2005, Amtrak filed a Motion for Summary Judgment. Amtrak argued that its rules required a baggage handler to inspect the sides of a pallet before attempting to move it to prevent pallets from becoming jammed, and, further, required that a baggage handler inspect the ground and floor area for contraband that could cause a slip or fall while working. Thus, assuming the jack was defective, Mr. Manasco's injury was not caused by the defective jack, but rather by his own negligence in not continually inspecting his surroundings. Because the alleged injury was caused solely by Mr. Manasco's negligence, Amtrak asserts he is barred from recovery.
In his Memorandum in Opposition, Mr. Manasco urges that FELA imposes liability upon railroad employers if the railroad's negligence plays any part in the employee's injury. If the employee's actions are deemed negligent, but the employer's actions also contributed to the injury, contributory negligence principles apply.
PROCEDURAL HISTORY:
On July 29, 2005, the district court entertained two motions filed by defendant/appellee, Amtrak, a motion to continue trial and a motion for summary judgment. The transcript of July 29, 2005, indicates that the trial court granted both the motion to continue and the motion for summary judgment. The record *1141 further indicates that the trial court subsequently signed a judgment August 11, 2005, granting Amtrak's motion to continue. This judgment was entered on the record on August 16, 2005. The judgment makes no mention of the motion for summary judgment.
On August 12, 2005, Mr. Manasco filed a motion for reconsideration and/or motion for a new trial. On August 15, 2005, the trial court rendered a Judgment and Reasons for Judgment denying Mr. Manasco's motion for new trial. The opening paragraph of the Judgment references that the trial court granted summary judgment in favor of Amtrak on July 29, 2005. However, the record does not indicate that a summary judgment to that effect was signed prior to Mr. Manasco requesting a new trial.
Mr. Manasco filed his petition for appeal October 5, 2005.[2] Following the Petition for Appeal in the record is a judgment signed by the trial court on February 24, 2006, and entered on the record February 27, 2006. This Court initially ordered Mr. Manasco to show cause why his appeal should not be dismissed for failure to file a Petition for Appeal following the signing of the judgment in February.
After considering the briefs and argument on the jurisdiction issue, this Court finds that the signing of the February 24, 2006, judgment prior to lodging of the record cured any jurisdictional defect. See Overmier v. Traylor, 475 So.2d 1094 (La.1985).
DISCUSSION:
Appellate courts review the granting of summary judgment de novo under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. See also Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257, p. 7 (La.2/29/00), 755 So.2d 226, 231. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. Two Feathers Enterprises v. First Nat'l Bank of Commerce, 98-0465, p. 3 (La.App. 4 Cir. 10/14/98), 720 So.2d 398, 400.
A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La.Code Civ. Proc. art. 966. If the court finds that a genuine issue of material fact exists, summary judgment must be rejected. Oakley v. Thebault, 96-0937, p. 3 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490. The burden does not shift to the party opposing the summary judgment until the moving party first presents a prima facie case that no genuine issues of material fact exist. Id. At that point, if the party opposing the motion "fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." La.Code Civ. Proc. art. 966 C. Summary judgment should then be granted.
Mr. Manasco's case is filed pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, et seq., which is the exclusive remedy for railroad workers injured on the job as the result of *1142 negligence on the part of their employer. It provides the sole rights for recovery. Railroad workers are not subject to state workers' compensation laws.
Under the FELA, the railroad industry has a non-delegable duty to provide its employees with a reasonably safe place to work. Bailey v. Central Vermont Ry. Inc., 319 U.S. 350, 352, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444 (1943). Specifically, Section 51 of the FELA provides in part:
Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury or death resulting in whole or in part from the negligence of any of he officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.
To recover pursuant to the FELA, a plaintiff must show that 1) he was injured in the scope of his employment, 2) which employment is in furtherance of interstate commerce, 3) his employer was negligent, and 4) his employer's negligence played some part in causing the injury for which he seeks compensation under the FELA. Green v. River Terminal Ry. Co., 763 F.2d 805, 808 (6 Cir.1985).
Amtrak argues that "there is no question in this case that the condition of the pallet jack is not causally related to plaintiff's slipping on a scrap of paper or to the pallet's having gotten jammed against another pallet." To support its argument, Amtrak cites McDonald v. Northeast Illinois Regional, 249 F.Supp.2d 1051 (N.D.Ill., E.Div.2003). In McDonald, plaintiff injured his ankle when he stepped off of a concrete apron covered in snow while attempting to dislodge a forklift stuck in the snow. He alleged two separate acts of negligence by his employer: 1) failure to remove excessive snow from the work area, and 2) improper use of a forklift. The court found that there were material issues of fact as to whether the employer had breached its duty of care to provide a reasonably safe place to work in failing to remove the snow. However, the court found that plaintiff had failed to produce any evidence that the use of the forklift was in any way connected to his injury.
We find the facts of this case different from those in McDonald, supra. Mr. Manasco and his co-worker, John Lott, both testified that they had reported the defective pallet jack to their superiors on numerous occasions. Mr. Manasco further testified that it was extremely difficult to pull and maneuver the jack because of the defects in the hydraulic mechanism. He also testified that the pallets of magazines he was attempting to unload were jammed tightly into the mail car, making it very difficult to unload the pallets. The fact that he had successfully unloaded several pallets prior to the fall does not suggest that the task was easy, nor does it suggest that the jack played no role in his slipping on the piece of paper. Mr. Manasco testified that he inspected the floor and itemized the number of pallets he had to unload before he began. He presumed that the paper he slipped on fell off of one of the earlier unloaded pallets.
Mr. Manasco also testified that he and Mr. Lott were the only two employees left at the yard at the time of this incident, other than the conductor who was not allowed to come onto the track. They had been instructed to get the mail car unloaded so that the train could "go to the back."
*1143 To reach the conclusion that the pallet jack played no part in Mr. Manasco's fall, we would have to totally discount his testimony about the difficulty he had in using the pallet jack to unload the pallets. He testified that the pallets were jammed tightly together, making it difficult to see between the pallets. He had to jerk and pull on the pallet jack in order to lift the pallet from its place of rest to the door of the car. Contrary to counsel for Amtrak's statements at oral argument, Mr. Manasco did not testify that he was smoothly pulling the jack at the time he slipped. Rather, he had to pull the jack "from side to side" while backing up. On summary judgment, credibility is not to be weighed; rather, testimony is to be accepted as true. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750; Granier v. Avondale Indus., Inc., 05-1085, p. 4 (La.App. 4 Cir. 8/16/06), 940 So.2d 678, 681.
We are cognizant that the FELA does not make the employer the insurer of the safety of its employees while they are on duty. Atlantic Coast Line R.R. Co. v. Dixon, 189 F.2d 525, 526-27 (5th Cir.1951). The employer is not held to an absolute responsibility for the reasonably safe condition of the place, tools and appliances, but only to the duty of exercising reasonable care to that end, the degree of care being commensurate with the danger reasonably to be anticipated. Id., citing Baltimore & O.S.W.R. Co. v. Carroll, 280 U.S. 491, 50 S.Ct. 182, 74 L.Ed. 566 (1930). Likewise, an employee is not the insurer of his own safety. An employee must exercise reasonable and ordinary care for his own safety. Dixon, 189 F.2d at 527.
Based on Mr. Manasco's and Mr. Lott's testimony regarding reporting the defective jack to their superiors, the work conditions at the time of the alleged accident, and the circumstances surrounding the alleged injury, we find that there exist genuine issues of material fact as to whether the defective pallet jack was causally related to Mr. Manasco's fall and subsequent injury, whether Amtrak exercised reasonable and ordinary care in not replacing the defective jack, and whether Mr. Manasco exercised reasonable and ordinary care when inspecting his work surroundings.
For the foregoing reasons, we reverse the judgment of the trial court and remand this matter for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] In pleadings before the lower court, Mr. Manasco alleged that he injured his shoulder at work on February 26, 2002. At oral argument, counsel for Mr. Manasco dismissed the claim for the shoulder injury. We will therefore omit any discussion of the shoulder injury.
[2] Delays for filing had been suspended by the Legislature, thus the Petition for Appeal was timely.