940 So.2d 12 (2006)
Esther BLANKENSHIP
v.
OCHSNER CLINIC FOUNDATION, Dr. Dennis Kay, Dr. Timothy Dozier, and Dr. Edwin N. Beckman.
No. 2006-CA-0242.
Court of Appeal of Louisiana, Fourth Circuit.
August 16, 2006.
*13 Karen Wiedemann, Wiedemann & Wiedemann, New Orleans, LA, for Plaintiff/Appellant, Esther Blankenship.
Don S. McKinney, John L. Fontenot, Jr., Adams and Reese, L.L.P., New Orleans, LA, for Defendants/Appellees, Ochsner Clinic Foundation, Dennis Kay, M.D. and Edwin Beckman, M.D.
(Court composed of Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY, Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.
The plaintiff, Esther Blankenship, sued Ochsner Clinic Foundation, Dennis Kay, M.D., Timothy Dozier, M.D., and Edwin N. Beckman, M.D. for medical malpractice. The trial court granted a summary judgment in favor of the defendants, and Ms. Blankenship is appealing that judgment.

FACTS[1] AND PROCEDURAL HISTORY
At the end of 1999, Ms. Blankenship visited her primary care physician at Ochsner Clinic. He ordered an MRI[2] of her spine, which showed a suspicious lesion on a lumbar vertebra.[3] A bone imaging study of her full body was done, and the results also indicated a problem with the vertebra. Ms. Blankenship's primary care physician suggested that she undergo a biopsy of the lesion affecting the vertebra.
Ms. Blankenship underwent the biopsy after her consent for the procedure was obtained. Dr. Kay, Dr. Dozier, and Dr. *14 Beckman performed the biopsy. The biopsy was completed, and a tissue specimen was obtained for further examination. Some bleeding was noted at the time of the biopsy.
Because the bleeding continued, a CAT scan[4] was performed to locate the source of the bleeding. The CAT scan revealed that Ms. Blankenship's bleeding resulted from the biopsy procedure. Ms. Blankenship was admitted to the intensive care unit at Ochsner Foundation Hospital and was hospitalized for seven days.
During her hospitalization, Ms. Blankenship received blood transfusions as a result of her blood loss. Ultimately, a consultation with a vascular surgeon was requested, and after interventional procedures were performed to stop the bleeding, Ms. Blankenship had no further signs of bleeding.
Ms. Blankenship filed a claim under the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41 et seq. The medical review panel found no negligence on the part of the clinic or the physicians involved in Ms. Blankenship's care. After the panel's report was issued, Ms. Blankenship filed suit against the defendants alleging that the physicians who performed the lumbar biopsy were negligent in severing one of her arteries. She further alleged that as a result of the negligence, she suffered "permanent and functional disability of her whole body which has diminished her ability to perform many of her daily personal, household, and leisure activities."
Almost two years after Ms. Blankenship filed her petition, the defendants filed a motion for summary judgment on the grounds that Ms. Blankenship could not meet her burden of proof in her malpractice suit, because she did not have an expert witness to testify that the bleeding she suffered after the biopsy was caused by the defendants' negligence. The trial court granted the motion for summary judgment and dismissed her case with prejudice. Ms. Blankenship moved for a new trial, which was denied. Ms. Blankenship is now appealing the decision granting summary judgment in favor of the defendants.

DISCUSSION
Standard of Review
Appellate courts review the granting of summary judgment de novo under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Reynolds v. Select Props., Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. See also Indep. Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 230.
A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). If the court finds that a genuine issue of material fact exists, then summary judgment must be rejected. Oakley v. Thebault, 96-0937 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490. The burden of proof does not shift to the party opposing the summary judgment until the moving party first presents a prima facie case that no genuine issues of material fact exist. Id. At that point, if the party opposing the motion "fails to produce factual support sufficient to establish that he will *15 be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." La. C.C.P. art. 966(C)(2). Summary judgment should then be granted.
Assignment of Error
Ms. Blankenship has raised a single assignment of error. She contends that the trial court relied solely on the report of the medical review panel without any supporting affidavits to sustain the defendants' motion for summary judgment.
The Defendants' Burden of Proof
In the instant case the defendants filed the motion for summary judgment. Therefore, under La. C.C.P. art. 966, they had the initial burden of proof. They were required to present a prima facie case that there were no genuine issues of material fact. In support of their position, they submitted to the trial court the report of the medical review panel stating that "[t]he evidence does not support the conclusion that the defendants failed to meet the applicable standard of care as charged in the complaint."
Ms. Blankenship challenged the defendants' evidence by arguing that it was not in the form of a deposition or an affidavit and, therefore, could not be used as evidence in support of a motion for summary judgment. Thus, according to Ms. Blankenship's argument, the defendants . . . failed to produce the prima facie case that was required for the defendants to meet their burden of proof under La. C.C.P. art. 966.
In Williams v. Memorial Medical Center, 03-1806 (La.App. 4 Cir. 3/17/04), 870 So.2d 1044, 1053, this Court held that "[i]n a medical malpractice case, the medical review panel's opinion is admissible as expert evidence on a motion for summary judgment." This Court concluded that the findings of a medical review panel, "whose members are physicians actively working in their fields of expertise, are based on the experts' personal knowledge as gained through experience and may be considered in evaluating a summary judgment." Id., quoting Hinson v. Glen Oak Retirement Home, 34,281 (La.App. 2 Cir. 12/15/00), 774 So.2d 1134, 1137. This Court also cited La. R.S. 40:1299.47(H) as a basis for admitting a medical review panel's report as expert evidence to support a motion for summary judgment. That statute provides that the "report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant. . . ."
We find that the medical review panel report, which stated that there was no negligence on the part of the defendants, was sufficient to present a prima facie case that they were not liable for Ms. Blankenship's injuries. Therefore, the burden of proof shifted to Ms. Blankenship after the defendants presented their evidence.
Ms. Blankenship's Burden of Proof
The plaintiff's burden of proof in a medical malpractice act is statutorily established. Pursuant to La. R.S. 9:2794(A)(1)-(3), a plaintiff in a malpractice action against a physician must prove:
(1)The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians . . . licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by *16 physicians . . . within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
To avoid having the motion for summary judgment granted in favor of the defendants, Ms. Blankenship was required to produce factual support sufficient to establish that she would be able to satisfy her evidentiary burden of proof at trial. Nevertheless, she claimed that it was not necessary for her to present evidence from a medical expert to support the allegations in her petition. The defendants argued otherwise, contending that expert medical evidence was required.
In Broussard v. Andersson, 05-0006 (La.App. 4 Cir. 11/03/05), 921 So.2d 128, 132, this Court stated that "[t]o determine whether a physician possesses the requisite degree of knowledge or skill or whether he exercised reasonable care or diligence, the court is guided by expert witnesses who are members of the medical profession. . . ." This Court also sated that "[t]he jurisprudence has recognized that an expert witness is generally necessary as a matter of law to prove a medical malpractice claim." Id., citing Williams v. Metro Home Health Care Agency, Inc., 02-0534 (La.App. 4 Cir. 5/8/02), 817 So.2d 1224, 1228.
There are, however, some situations where the jurisprudence has recognized that expert testimony is not required to meet the plaintiff's burden of proof in a medical malpractice case. Pfiffner v. Correa, 94-0924, 94-0963, and 94-0992 (La.10/17/94), 643 So.2d 1228, 1230. In the Pfiffner case the Louisiana Supreme Court explained that a plaintiff in a medical malpractice case could prevail regarding the appropriate standard of care if a layperson can infer negligence from the facts presented at trial. Id. The Supreme Court itemized the situations in which a plaintiff need not present an expert medical witness in a malpractice case. The Supreme Court stated that "[e]xpert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body." Id. at 1233.
In Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1276 (La.1991), the Louisiana Supreme Court found that "Louisiana jurisprudence has held that expert witnesses who are members of the medical profession are necessary sources of proof in medical malpractice actions to determine whether the defendant doctor possessed the requisite degree of skill and knowledge, or failed to exercise reasonable care and diligence." This Court in Pierre-Ancar v. Browne-McHardy Clinic, 00-2409, 00-2410 (La.App. 4 Cir. 11/16/02), 807 So.2d 344, 348, stated that with a few exceptions, such as those described in the Pfiffner case, "because of the complex medical and factual issues involved in medical malpractice cases, a plaintiff will likely fail to sustain his or her burden of proving his or her claim under La. R.S. 9:2794 without medical experts."
In Johnson v. State of Louisiana/University Hospital, 01-1972 (La.App. 4 Cir. 1/16/02), 807 So.2d 367, 371, this Court found that opinions of expert witnesses who are members of the medical profession and who are qualified to testify are generally necessary to determine whether or not a defendant in a medical malpractice action possessed the requisite degree of knowledge or skill or failed to exercise *17 reasonable care and diligence in treating a plaintiff. Additionally, this Court stated in connection with a motion for summary judgment that "in the absence of counter-affidavits, it must be assumed that there is no dispute with regard to facts set forth in defendant's affidavits and other documents submitted to support the motion." Id.
In the instant case, however, the alleged malpractice was not the type of malpractice that was described in the Pfiffner case from which a layperson could infer negligence without the benefit of expert testimony. Therefore, the instant case is not the type of medical malpractice case in which the plaintiff need not present expert medical evidence.
The Doctrine of Res Ipsa Loquitur
Ms. Blankenship also argues on appeal that she was entitled to rely on the doctrine of res ipsa loquitur to demonstrate that the defendants were negligent. Therefore, she contends that it was not necessary for her to present expert medical evidence in connection with the motion for summary judgment to dispute the evidence submitted by the defendants.
In Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654, 667 n. 11 (La.1989) (on reh'g), the Louisiana Supreme Court discussed the applicability of the doctrine of res ipsa loquitur in medical malpractice cases. The Supreme Court stated:
In medical malpractice actions based on res ipsa loquitur the plaintiff generally must use expert testimony to establish that the plaintiff's injury is a type which ordinarily would not occur in the absence of negligence. Lay jurors with common knowledge and ordinary experience cannot be expected to infer from the circumstances surrounding an injury incurred during medical procedures whether the health care provider failed to use reasonable care and whether this failure was a cause of the injury.
Thus, even in a malpractice case where the doctrine of res ipsa loquitur is applicable, the plaintiff is still required to present expert testimony to establish the standard of care that should have been used by the provider of medical services. The only exception to this requirement occurs when the injury is the result of an obviously careless act of the type described in the Pfiffner case from which a layman could infer negligence without the need for an expert witness.
Decision
Based on the foregoing discussion, we find that Ms. Blankenship was required to present medical evidence from an expert witness. To prevail on the motion for summary judgment, Ms. Blankenship was required to establish (1) the standard of care applicable to the defendants, (2) that the defendants breached that standard of care, and (3) that her injuries were caused by the defendants' negligence in breaching the standard of care. La. R.S. 9:2794 A. Without evidence from an expert medical witness, Ms. Blankenship was not able to counter the report of the medical review panel finding that the defendants did not breach the applicable standard of care in their treatment of Ms. Blankenship. Because Ms. Blankenship did not produce factual support sufficient to establish that she would be able to satisfy her evidentiary burden of proof at trial, under La. C.C.P. art. 966(C)(2), there was no genuine issue of material fact. Therefore, she could not prevail against the defendants on the motion for summary judgment.

CONCLUSION
The trial court judgment is correct. Therefore, the judgment is affirmed.
AFFIRMED.
NOTES
[1] The facts are taken from the briefs and memoranda in this case. Although the facts are not in evidence, the parties appear to agree on the basic facts.
[2] MRI, an acronym for magnetic resonance imaging, refers to a technique used to create images of organs of the body and other living tissue.
[3] A lumbar vertebra is one of the bony segments in that part of the spinal column that is located in the lower back.
[4] CAT scan, an acronym for computerized axial tomography scan, is an x-ray procedure that combines many x-ray images with the aid of a computer to generate cross-sectional views and three-dimensional images of the internal organs and structures of the body.