LEON A. CANNIZZARO, JR., Judge.
LThe plaintiffs, Wesley Herman and his wife, Michelle Herman, sued a number of defendants, including Joseph Caspi, M.D., Aluizio R. Stopa, M.D., and their employer, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the “LSU Board”), alleging that Dr. Caspi and Dr. Stopa and certain other defendants committed medical malpractice that resulted in the death of their infant daughter, Emily Herman.[1] The trial court granted summary judgment in favor of Dr. Caspi, Dr. Stopa, and the LSU Board. Mr. and Mrs. Herman are appealing that judgment.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
When she was twenty days old, Emily was admitted to Children’s Hospital for evaluation of what was suspected to be a problem with her heart. Medical tests 1 ¿were conducted at Children’s Hospital, and based on the results of those tests, Emily was diagnosed with a congenital heart defect known as TGA, an acronym for transposition of the great arteries.[2] TGA must be corrected surgically, most commonly in a procedure called an arterial switch operation or ASO.
When Emily arrived at Children’s Hospital on Saturday, April 5, 1997, she was in an unstable condition, and she had congestive heart failure. By the next morning, she was placed on a respirator to assist her breathing.
Emily was treated at Children’s Hospital by Dr. Stopa, a pediatric cardiologist. He and Dr. Caspi, a pediatric cardiothora-cic surgeon,[3] decided that Emily would *788 undergo an ASO to correct her heart defect on Monday morning, April 7, 1997. During the operation, which was performed by Dr. Caspi, complications arose, and Dr. Caspi then contacted a cardiotho-racic surgeon to assist him. Emily died shortly after the consulting surgeon arrived at Children’s Hospital.
Mr. and Mrs. Herman filed a claim under the Louisiana Medical malpractice Act, La. R.S. 40:1299.39 and 40:1299.41 et seq. The medical review panel found no negligence on the part of Dr. Caspi, Dr. Stopa, Children’s Hospital, or the 13pediatric critical care specialist at Children’s Hospital, who participated in Emily’s medical care before her surgery.
Mr. and Mrs. Herman originally filed suit against a number of defendants, alleging that Emily’s death was the result of medical malpractice that deprived her of a chance of survival. The original petition reserved to the Hermans the right to add as defendants, after the conclusion of the medical review panel proceeding, the physicians who treated Emily at Children’s Hospital. After the medical review panel proceeding was finished, Dr. Stopa and Dr. Caspi, the only two physicians involved in this appeal, were added as defendants in the lawsuit, along with the critical care physician who treated Emily at Children’s Hospital. With respect to Dr. Stopa and Dr. Caspi, the Hermans alleged that the ASO should have been performed sooner than it was and that Dr. Caspi should have scheduled a eardiothoracic surgeon to assist him with the operation rather than calling one for consultation after complications arose during Emily’s surgery.
Dr. Caspi, Dr. Stopa, and the LSU Board filed a motion for summary judgment. The motion was granted, and the Hermans are now appealing that decision.
DISCUSSION
Standard of Review
Appellate courts review the granting of summary judgment de novo under the same criteria governing the trial court’s consideration of whether summary judgment is appropriate. Reynolds v. Select Props., Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. See also Indep. Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257, p. 7 (La.2/29/00), 755 So.2d 226, 230.
A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). If the court finds that a genuine issue of material fact exists, then summary judgment must be rejected. Oakley v. Thebault, 96-0937, p. 4 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490. The burden of proof does not shift to the party opposing the summary judgment until the moving party first presents a prima facie case that no genuine issues of material fact exist. Id. At that point, if the party opposing the motion “fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.” La. C.C.P. art. 966(C)(2). Summary judgment should then be granted.
Assignments of Error
The Hermans have raised four assignments of error. The first assignment of error asserts that the trial court erred in granting the motion for summary judgment on the basis that there were no genuine issues of material fact regarding whether Dr. Caspi violated the applicable standard of care. The second, third, and fourth assignments of error contend that *789 the trial court erred in concluding that a jury could not infer negligence or breach of the standard of care from the testimony and actions of Dr. Caspi, Dr. Stopa, and other physicians who were defendants in the case.
[ fThe Defendants’ Burden of Proof
In the instant case Dr. Caspi, Dr. Stopa, and the LSU Board filed the motion for summary judgment. Therefore, under La. C.C.P. art. 966, they had the initial burden of proof. They were required to present a prima facie case that there were no genuine issues of material fact. In support of their position, they submitted to the trial court the report of the medical review panel[4] stating that “[t]he evidence does not support the conclusion that the defendants ... failed to meet the applicable standard of care as charged in the complaint.” The medical review panel also gave the reasons for the panel’s finding. The panel’s opinion stated that “[t]he outcome of this case would not have changed if the surgery were performed on the day of her [Emily’s] admission” and that “[t]he child died as a result of a very complex neonatal heart surgery, which has a recognized mortality in the best of circumstances.”
Additionally, Dr. Caspi, Dr. Stopa, and the LSU Board submitted to the trial court an affidavit of Rodney B. Steiner, M.D. declaring that he was a member of the medical review panel that reviewed the claims against Dr. Caspi and Dr. Stopa, as well as against the pediatric critical care specialist at Children’s Hospital who was involved in treating Emily. Dr. Steiner stated that for the reasons stated in the opinion rendered by the medical review panel, the panel was of the unanimous opinion that the evidence did not support a conclusion that the applicable standard of care was not met. Dr. Steiner further declared that he was “still of the opinion | ¡¡that the evidence does not support the conclusion that Dr. Caspi, Dr. Stopa ... failed to meet the applicable standard of care as charged in the complaint.”
We find that the medical review panel report, which stated that there was no breach of the standard of care imposed on Dr. Caspi and Dr. Stopa, and the affidavit of Dr. Steiner were sufficient to present a prima facie case that Dr. Caspi and Dr. Stopa were not liable for malpractice in the treatment of Emily. Therefore, the burden of proof shifted to the Hermans after Dr. Stopa, Dr. Caspi, and the LSU Board presented their evidence.

The Hermans’ Burden of Proof

The plaintiffs burden of proof in a medical malpractice act is statutorily established. Pursuant to La. R.S. 9:2794(A)(l)-(3), a plaintiff in a malpractice action against a physician must prove:
(l)The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians ... within the involved medical specialty.
*790 (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
To avoid having the motion for summary judgment granted in favor of Dr. Caspi, Dr. Stopa, and the LSU Board, the Her-mans were required to produce |7factual support sufficient to establish that they would be able to satisfy their evidentiary burden of proof at trial. Nevertheless, they claimed that it was not necessary for them to present evidence from a medical expert to support the allegations in their petition, because the testimony of the physicians involved in Emily’s treatment had stated in their depositions what the standard of care was, and because their actions demonstrated that they did not follow the standard of care. Therefore, the Hermans contended that a jury would be able to infer from the testimony of the defendant physicians that Dr. Caspi and Dr. Stopa breached the applicable standard of care. Dr. Caspi, Dr. Stopa, and the LSU Board argued otherwise, contending that expert medical evidence was required.
In Broussard v. Andersson, 05-0006, p. 6 (La.App. 4 Cir. 11/03/05), 921 So.2d 128, 132, this Court stated that “[t]o determine whether a physician possesses the requisite degree of knowledge or skill or whether he exercised reasonable care or diligence, the court is guided by expert witnesses who are members of the medical profession.... ” This Court also sated that “[t]he jurisprudence has recognized that ‘an expert witness is generally necessary as a matter of law to prove a medical malpractice claim’.” Id., citing Williams v. Metro Home Health Care Agency, Inc., 02-0534, p. 5 (La.App. 4 Cir. 5/8/02), 817 So.2d 1224, 1228.
There are, however, some situations where the jurisprudence has recognized that expert testimony is not required to meet the plaintiffs burden of proof in a medical malpractice case. Pfiffner v. Correa, 94-0924, 94-0963, and 94-0992 (La.10/17/94), 643 So.2d 1228, 1230. In the Pfiffner case the Louisiana Supreme Court explained that a plaintiff in a medical malpractice case could prevail regarding the appropriate standard of care if a layperson could infer negligence |sfrom the facts presented at trial. 94-0924, 94-0963, and 94-0992, p. 1, 643 So.2d at 1230. The Supreme Court itemized the situations in which a plaintiff need not present an expert medical witness in a malpractice case. The Supreme Court stated that “[ejxpert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient’s body.” 94-0924, 94-0963, and 94-0992, p. 9, 643 So.2d at 1233.
In Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1276 (La.1991), the Louisiana Supreme Court found that “Louisiana jurisprudence has held that expert witnesses who are members of the medical profession are necessary sources of proof in medical malpractice actions to determine whether the defendant doctor possessed the requisite degree of skill and knowledge, or failed to exercise reasonable care and diligence.” This Court in Pierre-Ancar v. Browne-McHardy Clinic, 00-2409, 00-2410 (La.App. 4 Cir. 11/16/02), 807 So.2d 344, 348, stated that with a few exceptions, such as those described in the Pfiffner case, “because of the complex medical and factual issues involved in medical malpractice cases, a plaintiff will likely *791 fail to sustain his or her burden of proving his or her claim under La. R.S. 9:2794 without medical experts.”
In Johnson v. State of Louisiana/University Hospital, 01-1972, p. 5 (La.App. 4 Cir. 1/16/02), 807 So.2d 367, 371, this Court found that opinions of expert witnesses who are members of the medical profession and who are qualified to testify are generally necessary to determine whether or not a defendant in a medical malpractice action possessed the requisite degree of knowledge or skill or failed to exercise reasonable care and diligence in treating a plaintiff. Additionally, this Court stated in connection with a motion for summary judgment 13that “in the absence of counter-affidavits, it must be assumed that there is no dispute with regard to facts set forth in defendant’s affidavits and other documents submitted to support the motion.” 01-1972, p. 6, 807 So.2d at 371.
In the instant case, however, the alleged malpractice was not the type of malpractice that was described in the Pfiffner case from which a layperson could infer negligence without the benefit of expert testimony. Therefore, the instant case is not the type of medical malpractice case in which the plaintiff need not present expert medical evidence. The instant case involved the treatment of a critically ill infant who required a very complex surgical procedure. We find that there is no way that a layperson could infer negligence in the instant case without expert testimony.
 The deposition statements upon which the Hermans rely to prove the applicable standard of care are clearly insufficient to establish the applicable standard of care that was imposed on Dr. Caspi and Dr. Stopa. For example, the Hermans assert that the statement by Dr. Caspi that “I felt at the time [when complications arose during the ASO] that I wanted somebody else experienced to assist me” should be construed to establish that under the applicable standard of care Dr. Caspi should have had a cardiothoracic surgeon to assist him during the surgery on Emily. Also, the Hermans contend that Dr. Stopa’s deposition statement that, in hindsight, he thought it would have “[pjrobably [been] better doing it on Saturday than doing it on Monday,” establishes that the applicable standard of care required Emily’s surgery to have been done before Monday.
Clearly, these statements do not establish the standard of care, and they do not prove that there was a breach in the standard of care. There was no evidence to support the proposition that the applicable standard of care required two surgeons Imfor an ASO, and Dr. Stopa explained that one of the reasons the surgery was not done sooner was that medications were being used in an attempt to stabilize Emily’s condition prior to surgery. The medications, which the physicians expected to work, did not, and surgery was then done. There was no evidence presented from which a jury could conclude that performing the ASO one or two days earlier would have made .any difference in the outcome of Emily’s surgery.

Decision

Based on the foregoing discussion, we find that the assignments of error are without merit. The Hermans were required to present medical evidence from an expert witness. To prevail on the motion for summary judgment, they were required to establish (1) the standard of care applicable to Dr. Caspi and to Dr. Stopa, (2) that Dr. Caspi and Dr. Stopa breached that standard of care, and (3) that Emily’s death and loss of a chance for survival were caused by the negligence of Dr. Caspi and Dr. Stopa in breaching the standard of care. La. R.S. 9:2794 A. Without evidence from an expert medical wit *792 ness, the Hermans were not able to counter the report of the medical review panel finding that Dr. Caspi and Dr. Stopa did not breach the applicable standard of care in their treatment of Emily.
Because the Hermans did not produce factual support sufficient to establish that they would be able to satisfy their eviden-tiary burden of proof at trial, under La. C.C.P. art. 966(C)(2), there was no genuine issue of material fact. Therefore, the Her-mans could not prevail against Dr. Caspi, Dr. Stopa, and the LSU Board on the motion for summary judgment.
^CONCLUSION
The trial court judgment is correct. Therefore, the judgment is affirmed.
AFFIRMED.
MURRAY, J., concurs and assigns reasons.

. Mr. and Mrs. Herman also sued (1) Surbhi Dargan, M.D., Emily's pediatrician, whose motion for summary judgment was denied and who is still a party to the lawsuit, (2) Louisiana Medical Mutual Insurance Company, Dr. Dargan’s insurer, (3) Tenet HealthSys-tem Hospitals, Inc. d/b/a Meadowcrest Hospital, the hospital where Emily was born, in favor of which summary judgment has been granted, (4) Bonnie Deselle, M.D., in whose favor summary judgment has been granted, (5) Children’s Hospital, the hospital where Emily was treated, and (6) St. Paul Mercury Insurance Company (also referred to in the record as St. Paul Fire and Marine Insurance Company), the insurer of Children's Hospital. Although Children's Hospital and its insurer filed motions for summary judgment, the record does not reflect whether the motions were heard.

. The two main arteries of the heart are the aorta and the pulmonary artery. In TGA, the normal position of the two arteries is reversed. In TGA, oxygen-rich blood returns to the lungs, and oxygen-poor blood gets carried to the rest of the body. Normally oxygen-poor blood returns to the lungs to be oxygenated, and oxygen-rich blood is circulated throughout the body. The only way for oxygen-rich blood to reach the body when TGA is present is through a connection between the two arterial routes. In Emily, a normal fetal structure between the two arteries allowed some mixing of the blood, but such a structure normally closes shortly after birth making it uncertain how long Emily would have oxygenated blood available for circulation to her body.

.A pediatric cardiothoracic surgeon specializes in the surgical treatment of diseases and disorders affecting the heart and lungs in children.

. In Williams v. Memorial Medical Center, 03-1806 (La.App. 4 Cir. 3/17/04), 870 So.2d 1044, 1053, this Court held that “[i]n a medical malpractice case, the medical review panel's opinion is admissible as expert evidence on a motion for summary judgment.” See also Blankenship v. Ochsner Clinic, 06-0242, p. 5 (La.App. 4 Cir. 8/16/06), 940 So.2d 12.